1  DAVID D. COOKE (BAR NO. 94939)
   KAMRAN JAVANDEL (BAR NO. 272900)
2  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
3  Three Embarcadero Center, 12th Floor
   San Francisco, CA 94111-4074
4  Phone: (415) 837-1515
   Fax: (415) 837-1516
5  E-Mail: dcooke@allenmatkins.com
            kjavandel@allenmatkins.com
6
   Attorneys for Plaintiff
7  CALIFORNIA-AMERICAN WATER COMPANY

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA-AMERICAN WATER          Case No.
    COMPANY, a California corporation,
12                                     COMPLAINT FOR DAMAGES UNDER
                                       FEDERAL TORT CLAIMS ACT (28 U.S.C.
13          Plaintiff,                 §§ 2671-2680)

14      vs.

15
    UNITED STATES OF AMERICA,
16
            Defendant.
17

18

19          Plaintiff California American Water Company, a California corporation ("Cal-Am"

20  or "Plaintiff"), complains against Defendant the United States of America ("United States"

21  or "Defendant"), and alleges as follows:

22                     **JURISDICTION AND VENUE**

23      1.      This Court has jurisdiction over actions against the United States,

24  pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1).

25      2.      This district is the proper venue for this action pursuant to 28 U.S.C. §§

26  1391(b) and 1402(b) because the property that is the subject matter of this action is located

27  in this district and the events giving rise to the claims of this action occurred in this district.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.17/SF

Case No.
COMPLAINT FOR DAMAGES

2.      This district is the proper venue for this action pursuant to 28 U.S.C. §§ 1391(b) and 1402(b) because the property that is the subject matter of this action is located in this district and the events giving rise to the claims of this action occurred in this district.

## STATEMENT OF THE CLAIM

3.      This action arises out of the chemical contamination of a drinking water supply well, known as the "Nut Plains Well," located in eastern Sacramento County. Plaintiff, a water utility, owns and operates the Nut Plains Well as part of an area-wide water supply system.  The chemicals that contaminated the well are perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"), two forms of a group of chemicals known as per- and polyfluorinated alkyl substances ("PFAS").  The United States, through the Department of the Air Force ("Air Force"), a military department within the United States Department of Defense, an Executive Branch Department of the United States government, released PFOA and PFOS to the groundwater through its use of products containing these compounds at the former Mather Air Force Base ("Mather Base").  The PFOA and PFOS contamination of the Nut Plains Well was the result either of leaching of PFOA and PFOS into the groundwater at the Mather Base and migration of those compounds through the groundwater aquifer directly to the Nut Plains Well; or of the Air Force's practice of reinjecting PFOA- and PFOS-contaminated groundwater, after treating that groundwater for other chemical pollutants at the Mather Base, into the same aquifer from which Cal-Am extracts groundwater at the Nut Plains Well; or of both.  As a proximate result of PFOA and PFOS contamination of the Nut Plains Well, Cal-Am has suffered damages, including the costs of construction and installation of a treatment system (the "GAC Treatment System") to remove PFOA and PFOS from extracted groundwater, the costs of maintaining and monitoring the performance of the GAC Treatment System, and the costs of testing groundwater at the well for PFOA and PFOS.  Cal-Am's claims include claims for public and private nuisance, negligence per se, and trespass.  Cal-Am brings these claims pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-2-

Case No.
COMPLAINT FOR DAMAGES

## THE PARTIES

4.       Cal-Am is, and at all times herein mentioned was, a California corporation with its principal place of business located in San Diego, California.  Cal-Am is an investor-owned public utility company that is subject to regulation by the California Public Utilities Commission and that provides water service to commercial and residential customers in numerous locations throughout California, including in the County of Sacramento.  On or about January 15, 2002, Cal-Am acquired all of the water utility assets in California formerly owned by Citizens Utilities Company of California, including the Nut Plains Well.

5.       Defendant United States of America is a sovereign state and national government.

## FACTUAL ALLEGATIONS

### The Air Force's Operations and Cleanup Efforts at the Mather Base

6.       At all times relevant to this complaint, Cal-Am owned and operated the Suburban-Rosemont drinking water supply system, which serves residential, commercial, and industrial water customers in eastern Sacramento County.  The Nut Plains Well is, and at all times relevant hereto, has been an integral and important groundwater supply well within the Suburban-Rosemont system.

7.       Cal-Am is informed and believes, and on the basis of such information and belief alleges, that the Mather Base, located in the City of Rancho Cordova in eastern Sacramento County, was established in 1918 as an airfield and pilot training base and continued in operation until 1922; that it was reactivated from 1930 to 1932; that it reopened again in 1941 during World War II; and that it operated continuously until in or about 1993.  Other operations at the Mather Base included aviation support, service and maintenance of various military aircraft, and industrial uses.  In 1993, the Mather Base was decommissioned pursuant to the Base Realignment and Closure Act ("BRAC").

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-3-

Case No.
COMPLAINT FOR DAMAGES

8.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, that, beginning in the early 1970s and until about 1984, the Air Force used products containing PFOA and PFOS, including aqueous film-forming foam ("AFFF"), at the Mather Base for fire suppression and fire-fighting training.

9.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, that the AFFF products used by the Air Force at the Mather Base contained PFOA and PFOS; that, as a result of fire-fighting training and fire suppression activities conducted by the Air Force at the Mather Base, significant quantities of PFOS and PFOA were released by the Air Force into the surface soil at the Mather Base; and that such PFOS and PFOA compounds leached into groundwater underlying the Mather Base.

10.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, that the Air Force's operations at the Mather Base also resulted in the release of volatile organic compounds ("VOCs") into the soil and groundwater at the Mather Base, and that, since in or about 1998, the Air Force has operated groundwater extraction and treatment systems at the Mather Base (the "Mather GET Systems") to remove and treat groundwater contaminated by releases of VOCs into the environment at the Mather Base.  Cal-Am is further informed and believes, and on the basis of such information and belief alleges, that the Mather GET Systems utilized a treatment technology known as "air stripping," which if properly implemented is effective at removing VOCs in water, but which is ineffective at removing PFOS and PFOA.  Cal-Am is further informed and believes, and on the basis of such information and belief alleges, that since in or about 1998, the Air Force has reinjected groundwater that had been extracted and treated for VOCs by the Mather GET Systems into the aquifer using its injection wells, including wells designated IW 501, IW 502, IW 503 and IW 504 in the so-called Main Base/SAC area, and wells designated 7-IW-01, 7-IW-02, 7-IW-03, and 7-IW-04 in the so-called Site 7 area.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-4-
Case No.
COMPLAINT FOR DAMAGES

11.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, that from in or about 1998 until in or about January 2018, the Air Force, with actual or constructive knowledge of the presence, or the risk of the presence, of PFOA and PFOS in the Mather Base groundwater, of the actual or potential health risks of ingestion of PFOS and PFOA by humans, and of the ineffectiveness of the Mather GET Systems to remove PFOS and PFOA, discharged treated effluent from the Mather GET Systems into groundwater aquifers, through its injection wells including wells designated IW 501, IW 502, IW 503, and IW 504, thereby reintroducing into the groundwater PFOS and PFOA that had been extracted by the Mather GET Systems.

**The Air Force's Knowledge Of Potential Environmental And Health Hazards Associated With AFFF Products Containing PFAS.**

12.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, that numerous analyses prepared and published since at least 1974 have indicated that PFAS, contained in AFFF and other products, may be harmful to water resources, toxic to fish, and/or dangerous to human health.  These analyses and publications include, without limitation, the following:

a.  The Air Force Weapons Laboratory's report entitled *Treatability of Aqueous Film-Forming Foams Used for Fire Fighting*, AFWL-TR-73-279 (February 1974) ("1974 Treatability Study") reported on a study conducted by or on behalf of the Air Force regarding the "treatability and hazards of disposing of AFFFs."  In conducting the study, the Air Force was motivated by a concern for disposing of AFFFs after use.  The 1974 Treatability Study indicated, among other things, that "of prime importance was the determination of the feasibility and the limitations of using existing biological waste treatment processes for achieving biodegradation and detoxification of the AFFFs."  The 1974 Treatability Study also reflected the Air Force's recognition that AFFF would impact

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-5-
Case No.
COMPLAINT FOR DAMAGES

1    domestic wastewater treatment plants, and advised that discharge of

2    AFFFs into sanitary sewers should be done at a controlled rate.  The 1974

3    Treatability Study also stated, in part: "If practical, it is recommended

4    that the AFFF be continuously discharged, which would result in the

5    lowest concentration in the domestic wastewater."  The 1974 Treatability

6    Study also reflected the determination by the Air Force that AFFF-

7    contaminated effluent is toxic to trout.

8    b.   The USAF Environmental Health Laboratory report entitled

9    *Biodegradability and Toxicity of Light Water FC206, Aqueous Film*

10   *Forming Foam*, EHL(K) 74-26 (November 1974) reported on the results

11   of fish toxicity tests using AFFF solutions.

12   c.   The Naval Research Laboratory draft report entitled Proposed Revision

13   of AFFF Specification MIL-F-24385 (June 1, 1975) included a proposal

14   for revising the military specification for AFFF based on concerns about

15   its toxicity to marine life and about its biodegradability.

16   d.   The Organisation for Economic Co-operation and Development's 2002

17   *Hazard Assessment of Perfluorooctane Sulfonate (PFOS) and Its Salts*

18   concluded that PFOS was widespread and persistent in the environment,

19   and that exposure to PFOS was toxic to mammals.

20   e.   The United States Environmental Protection Agency's ("EPA") 2002

21   *Revised Draft Hazard Assessment of Perfluorooctonoic Acid (PFOA) and*

22   *Its Salts* connected the presence of PFOA to AFFF used near fire-training

23   areas and discussed "statistically significant" associations between PFOA

24   and adverse health impacts.

25   f.   The EPA's 2005 *Draft Risk Assessment of Potential Human Health*

26   *Effects Associated with Perfluorooctonoic Acid and Its Salts* concluded

27   that PFOS had "suggestive evidence of carcinogenicity."

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-6-
Case No.
COMPLAINT FOR DAMAGES

g.  The EPA Science Advisory Board's 2006 review of the EPA's 2005
    assessment concluded PFOA was "likely to be carcinogenic."

13.    In 2009, the EPA's Office of Water published a Provisional Health Advisory level of .02 micrograms per liter ("μg/L") for PFOS in drinking water (equivalent to 200 parts per trillion, or "ppt") and 0.4 μg/L for PFOA in drinking water (400 ppt) (collectively, the "2009 HAs"), based on the potential toxicity of PFOS and PFOA to humans.

14.    On May 2, 2012, the EPA published its third Unregulated Contaminant Monitoring Regulations ("UCMR 3"), which identified PFOA and PFOS as unregulated contaminants to be monitored in public water systems.

15.    On May 25, 2016, the EPA released a new health advisory of 0.07 μg/L (70 ppt) for a combined concentration of PFOA and PFOS (the "2016 HA").

16.    On June 26, 2018, the Division of Drinking Water of California's State Water Resources Control Board ("DDW") established a "Notification Level" of 14 ppt for PFOA and 13 ppt for PFOS, and a "Response Level" of 70 ppt for combined PFOA and PFOS.  More recently, on August 22, 2019, DDW issued a notification level of 5.1 ppt for PFOA and 6.5 ppt for PFOS.

**The Air Force Had Knowledge of Actual or Potential PFAS Contamination of Groundwater at the Mather Base**

17.    Cal-Am is informed and believes, and on the basis of such information and belief alleges, that since at least 2012, the Air Force has publicly acknowledged the environmental and public health risks associated with its historic use of PFAS at Air Force facilities in general and at the Mather Base in particular, as well as the presence of PFOA and PFOS in groundwater at the Mather Base in excess of federal health-based limits. Examples of such acknowledgement include:

a.  On August 27, 2012, the Air Force released its *Interim Air Force Guidance on Sampling and Response Actions for Perfluorinated*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-7-
Case No.
COMPLAINT FOR DAMAGES

*Compounds at Active and BRAC Installations*, which acknowledged that PFAS have a "demonstrated toxicity," stated the Air Force would exercise due diligence with regard to PFAS to protect human health, and established a process for assessing PFAS at Air Force restoration sites.

b.  The Air Force's *Fourth Five-Year Review Report for Former Mather Air Force Base,* dated September 30, 2015 ("Fourth Review"), acknowledged PFAS as emerging contaminants that presented real or potential threats to human health, and recognized that PFOA and PFOS were present in soil and groundwater at the Mather Base, including in the Main Base/SAC Area and Site 7 contaminated groundwater plumes.  Because sampling conducted in September 2014 detected PFOS at the influent and effluent of Main Base/SAC Area treatment plant at 0.235 µg/L and 0.230 µg/L, respectively - concentrations that exceeded the 2009 HA and that confirmed the ineffectiveness of air stripping to remove PFAS, the Air Force, in the Fourth Review, decided that it could not determine that the original remedy provided long term protection of human health, and recommended follow-up sampling to determine the extent of PFAS in groundwater.

c.  According to the Air Force's report *Final Perfluorinated Compounds Determination at Multiple BRAC Bases Site Investigation Report, Former Fire Training Area FT011P, Mather Air Force Base*, dated November 2016, between March and April 2015 the Air Force caused twenty-nine grab groundwater samples from twenty existing groundwater monitoring wells at and in the vicinity of a former fire-fighting training area of the Mather Base, along with influent and effluent samples from an air stripping system designed to remove and treat groundwater contaminated with VOCs, to be collected and tested for PFAS.  Fourteen primary groundwater samples contained PFOA and PFOS above the 2009 HAs.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-8-
Case No.
COMPLAINT FOR DAMAGES

The maximum concentration of PFOA was detected at 891 μg/L, and the maximum concentration of PFOS was detected at 19 μg/L, three and two orders of magnitude, respectively, higher than the 2009 HAs.  PFOS and PFOA were also detected in both influent and effluent at the Mather Base air stripping system, at concentrations that exceeded the 2016 HA.  In this report the Air Force acknowledged: "Because PFOS and PFOA are not volatile, groundwater treatment by air stripping is not expected to substantively reduce concentrations of those compounds in groundwater."

d.  A consultant's report dated November 30, 2016, prepared for the Air Force, entitled *Final Main Base/Strategic Air Command Area Perfluorinated Compounds (PFC) Sampling Results* included data from sampling in May 2016 demonstrating that the concentrations of PFOA and PFOS in multiple extraction wells, and in both Mather Base GET System influent and effluent, individually or in combination, exceeded the 2016 HA.

e.  The Air Force's August 2018 *Draft Site Inspection Report for AFFF, Former Mather*, stated that from December 2016 to July 2018 the Air Force collected groundwater samples, drinking water samples, and Mather GET System samples.  These confirmed the presence of PFOS and PFOS in the Nut Plains Well and groundwater across the Mather Base in concentrations exceeding the 2016 HA.

18.    Cal-Am is informed and believes, and on the basis of such information and belief alleges, that in or about January 2018 the Air Force commenced GAC treatment system of Mather GET Systems effluent, in order to remove PFOS and PFOA, prior to re-injection of that effluent to the groundwater.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-9-
Case No.
COMPLAINT FOR DAMAGES

**The Air Force's Re-injection of PFOA-and PFOS-Contaminated Water Into the Groundwater Contaminated the Nut Plains Wells, Necessitating Installation of a Wellhead Treatment System**

19.     The Nut Plains Well was tested for PFOA and PFOS beginning in 2014 in connection with UCMR3 testing requirements.  PFOA and PFOS were both detected in the Nut Plains Well in 2014, 2015 and 2016.  Cal-Am removed the Nut Plains Well from service in May 2016, shortly after EPA published the 2016 HA.

20.     In connection with an investigation conducted by the California Regional Water Quality Control Board, Central Valley Region ("Regional Board"), The Boeing Company commissioned an examination of the source of PFOA and PFOS in the Nut Plains Well.  The Boeing Company's March 27, 2018 report ("Boeing Report") confirmed that the PFAS in Nut Plains Wells was caused by the Air Force's practice of re-injecting PFOS- and PFOS--contaminated water, after treatment for VOCs, into the same aquifer from which Cal-Am extracts groundwater at the Nut Plains Well.

21.     Cal-Am is informed and believes, and on the basis of such information and belief alleges, and the Air Force has acknowledged, that PFOS- and PFOA-contaminated groundwater that the Air Force re-injected into the aquifer near the Mather Base migrated off-site and contaminated the Nut Plains Well.

22.     By letter dated March 23, 2018, the Regional Board stated its conclusion that that the PFOA and PFOS in the Nut Plains Well originated from the Mather Base, and urged the Air Force to reimburse Cal-Am for costs incurred to install the GAC treatment system and operating costs associated with the treatment system.

23.     In 2017, Cal-Am installed the GAC treatment system at Nut Plains Well to remove PFOA and PFOS from the groundwater extracted by that well prior to pumping this water into the Suburban-Rosemont system for delivery to its customers.  In August 2017, after completion of installation of the GAC treatment system, Cal-Am resumed operation of the Nut Plains Well and commenced treatment of Nut Plains Well effluent through the GAC treatment system.  Cal-Am incurred costs of $1,292,899.12 to install the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-10-

Case No.
COMPLAINT FOR DAMAGES

GAC system and, during the first two years of operation of the GAC treatment system, incurred an additional $67,908.56 in monitoring and testing costs.  The GAC treatment system has successfully reduced PFOA and PFOS concentrations in water extracted by the Nut Plains Well to levels that meet all health-based drinking water standards imposed by federal and California state law.

24.    On or about March 9, 2019, Cal-Am served the Air Force with its Administrative Claim, setting forth its claims for compensation for the construction of the GAC treatment system at Nut Plains Well, pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.  A true and correct copy of the Administrative Claim is attached hereto as **Exhibit A**.  The Air Force did not respond to the Administrative Claim within six months of receipt thereof.  As a result, the Administrative Claim was deemed denied on or about September 9, 2019 pursuant to 28 U.S.C. § 2675(a).  By letter to Cal-Am dated September 17, 2019, the Air Force formally notified Cal-Am of its denial of the Administrative Claim.

## **FIRST CLAIM FOR RELIEF**

### (Public Nuisance)

25.    Cal-Am realleges and incorporates the allegations of paragraphs 1 through 24 as though fully set forth herein.

26.    The Air Force failed to use due care in its use, handling, management, and/or disposal of AFFF containing PFOA and PFOS at the Mather Base from the early 1970s to about 1984, resulting in the release of PFOS and PFOA to the soil and groundwater at and in the vicinity of the Mather Base, thereby contaminating groundwater, which under California law was and is a source of drinking water.

27.    As a proximate result of the Air Force's use, handling, management, and/or disposal of AFFF containing PFOA and PFOS, the Air Force created a condition that was harmful to health by contaminating a source of drinking water, affecting a substantial number of people at the same time.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-11-
Case No.
COMPLAINT FOR DAMAGES

28.     The Air Force failed to use due care in its practice of injecting PFOA- and PFOS-contaminated effluent from the Mather GET systems into the groundwater at and near the Mather Base, from in or about 1998 to in or about January 2018.

29.     Effluent from one or more of the Mather GET Systems that contained PFOA and PFOS and that the Air Force injected into groundwater contaminated the Nut Plains Well, a drinking water supply well, with substances that are harmful to health. The Air Force's acts and omissions thereby created a condition that was harmful to health by contaminating a source of drinking water in the Suburban-Rosemont drinking water supply system, affecting an entire community or neighborhood or a considerable number of persons, at the same time.

30.     The Air Force's foregoing acts and omissions, and each of them, obstructed Cal-Am's free use of its property, including the Nut Plains Well, so as to interfere with Cal-Am's comfortable enjoyment of that property, and as such was specially injurious to Cal-Am.

31.     Cal-Am did not consent to the Air Force's acts and omissions, as alleged herein.

32.     The public nuisance alleged herein was abatable and as such constituted a continuing public nuisance under the laws of the State of California.

33.     In addition to constituting a continuing public nuisance, the nuisance alleged herein also constitutes a continuing public nuisance per se, in that the Air Force failed to comply with Underground Injection Control ("UIC") program regulations promulgated under the Safe Drinking Water Act, 40 C.F.R. § 144.1 *et seq.*, including without limitation 40 C.F.R. § 144.12, which prohibits any injection activity that allows the movement of fluid containing "any contaminant into underground sources of drinking water, if the presence of that contaminant may . . . adversely affect the health of persons."  40 C.F.R. § 144.12(a).

34.     As a proximate result of the continuing public nuisance and continuing public nuisance per se created by the Air Force as alleged herein, Cal-Am suffered

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-12-
Case No.
COMPLAINT FOR DAMAGES

damages in the amount of $1,292,899.12, incurred in the acquisition and installation of the GAC system to abate the nuisance.  Moreover, during the first two years of operation of the GAC treatment system, Cal-Am suffered an additional $67,908.56 in damages, incurred as necessary costs of monitoring and testing the groundwater at the Nut Plains Well.

35.     Pursuant to the Federal Tort Claims Act, the United States is liable for the Air Force's acts and omissions as alleged herein.

Wherefore, Cal-Am prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

(Private Nuisance)

36.     Cal-Am realleges and incorporates the allegations of paragraphs 1 through 35 as though fully set forth herein.

37.     The Air Force failed to use due care in its use, handling, management, and/or disposal of AFFF containing PFOA and PFOS at the Mather Base from the early 1970s to about 1984, resulting in the release of PFOS and PFOA to the soil and groundwater at and in the vicinity of the Mather Base, thereby contaminating groundwater, which under California law was and is a source of drinking water.

38.     The Air Force failed to use due care in its practice of injecting PFOA- and PFOS-contaminated effluent from the Mather GET systems into the groundwater at and near the Mather Base, from in or about 1998 to in or about January 2018.

39.     Effluent from one or more of the Mather GET Systems that contained PFOA and PFOS and that the Air Force injected into groundwater contaminated the Nut Plains Well, a drinking water supply well, with substances that are harmful to health, thereby impairing Cal-Am's ability to serve safe and healthful drinking water to its customers and necessitating Cal-Am's removal of the Nut Plains Well from service until the well could be equipped with a wellhead treatment system that is effective at removing PFOA and PFOS from water.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-13-

Case No.
COMPLAINT FOR DAMAGES

40. The Air Force's foregoing acts and omissions, and each of them, obstructed Cal-Am's free use of its property, including the Nut Plains Well, so as to interfere with Cal-Am's comfortable enjoyment of that property.

41. Cal-Am did not consent to the Air Force's acts and omissions, as alleged herein.

42. The nuisance alleged herein was abatable and as such constituted a continuing nuisance under the laws of the State of California.

43. In addition to constituting a continuing private nuisance, the nuisance alleged herein also constitutes a continuing private nuisance per se in that the Air Force failed to comply with UIC program regulations promulgated under the Safe Drinking Water Act, 40 C.F.R. § 144.1 *et seq.*, including without limitation 40 C.F.R. § 144.12, which prohibits any injection activity that allows the movement of fluid containing "any contaminant into underground sources of drinking water, if the presence of that contaminant may . . . adversely affect the health of persons."  40 C.F.R. § 144.12(a).

44. As a proximate result of the continuing private nuisances created by the Air Force as alleged herein, Cal-Am suffered damages in the amount of $1,292,899.12, incurred in the acquisition and installation of the GAC system to abate the nuisance. Moreover, during the first two years of operation of the GAC treatment system, Cal-Am suffered an additional $67,908.56 in damages, incurred as necessary costs of monitoring and testing the groundwater at the Nut Plains Well.

45. Pursuant to the Federal Tort Claims Act, the United States is liable for the Air Force's acts and omissions as alleged herein.

Wherefore, Cal-Am prays for relief as set forth below.

### **THIRD CLAIM FOR RELIEF**

(Negligence)

46. Cal-Am realleges and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-14-

Case No.
COMPLAINT FOR DAMAGES

47.     Despite knowledge of the actual or potential toxicity of AFFF containing PFOA and PFOS, of the mechanism by which contaminants released at ground surface migrate to groundwater, of the fact that the aquifer beneath and in the vicinity of the Mather Base is an underground source of drinking water, and of the proximity of drinking water supply wells to the Mather Base, including the Nut Plains Well and others, that could be impacted by contaminants released to groundwater at the Mather Base, the Air Force failed to use due care in its use, handling, management, and/or disposal of AFFF containing PFOA and PFOS at the Mather Base from the early 1970s to about 1984, resulting in the release of PFOS and PFOA to the soil and groundwater at and in the vicinity of the Mather Base, thereby contaminating groundwater, which under California law was and is a source of drinking water.

48.     As a proximate result of the Air Force's failure to use due care in its handling, storage or use of products containing PFOA and/or PFOS at the Mather Base, groundwater in the Nut Plains Well, which is a source of drinking water in the Suburban-Rosemont water supply system operated by Cal-Am, became contaminated with PFOA and PFOS.

49.     Despite knowledge of the toxicity of PFOA and PFOS, of its history of use of products containing PFOA and PFOS at the Mather Base, of the mechanism by which contaminants released at ground surface migrate to groundwater, of the ineffectiveness of air stripping to remove PFOA and PFOS, of the fact that the aquifer beneath and in the vicinity of the Mather Base is an underground source of drinking water, and of the proximity of drinking water supply wells to the Mather Base, including the Nut Plains Well and others, that could be impacted by contaminants released to groundwater at the Mather Base, the Air Force, commencing in 1998, re-injected groundwater that it knew or should have known to contain PFOA and PFOS into the same aquifer from which Cal-Am extracts groundwater at the Nut Plains Well.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-15-
Case No.
COMPLAINT FOR DAMAGES

50.     As a proximate result of the Air Force's re-injection of the PFAS-contaminated water into the aquifer, groundwater in the Nut Plains Well, which is a source of drinking water in the Suburban-Rosemont water supply system operated by Cal-Am, became contaminated with PFAS.

51.     Cal-Am first learned that the injection of PFOS- and PFOA-contaminated groundwater by the Air Force was the cause of the contamination of the Nut Plains Well in 2018 when it received a copy of a report, dated March 27, 2018, prepared on behalf of The Boeing Company at the request of the California Regional Water Quality Control Board, that reached this conclusion.

52.     The acts and omissions of the Air Force and its employees described herein constitute negligence under the laws of the State of California, and constitute a failure by the Air Force and its employees to exercise due care.

53.     As a proximate result of the Air Force's negligence as alleged herein, Cal-Am suffered damages in the amount of $1,292,899.12, incurred in the acquisition and installation of the GAC system.  Moreover, during the first two years of operation of the GAC treatment system, Cal-Am suffered an additional $67,908.56 in damages, incurred as necessary costs of monitoring and testing the groundwater at the Nut Plains Well.

54.     Pursuant to the Federal Tort Claims Act, the United States is liable for these negligent acts and/or omissions.

Wherefore, Cal-Am prays for relief as set forth below.


**FOURTH CLAIM FOR RELIEF**

(Negligence Per Se)

55.     Cal-Am realleges and incorporates the allegations of paragraphs 1 through 54 as though fully set forth herein.

56.     Despite knowledge of the toxicity of PFOA and PFOS, of its history of use of products containing PFOA and PFOS at the Mather Base, of the mechanism by which

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-16-
Case No.
COMPLAINT FOR DAMAGES

contaminants released at ground surface migrate to groundwater, of the ineffectiveness of air stripping to remove PFOA and PFOS, of the fact that the aquifer beneath and in the vicinity of the Mather Base is an underground source of drinking water, and of the proximity of drinking water supply wells to the Mather Base, including the Nut Plains Well and others, that could be impacted by contaminants released to groundwater at the Mather Base, the Air Force, commencing in 1998, re-injected groundwater that it knew or should have known to contain PFOA and PFOS into the same aquifer from which Cal-Am extracts groundwater at the Nut Plains Well.  In doing so, the Air Force failed to exercise due care and failed to comply with UIC program regulations promulgated under the Safe Drinking Water Act, 40 C.F.R. § 144.1 *et seq.*, including without limitation 40 C.F.R. § 144.12, which prohibits any injection activity that allows the movement of fluid containing "any contaminant into underground sources of drinking water, if the presence of that contaminant may . . . adversely affect the health of persons."  40 C.F.R. § 144.12(a).

57.     As a proximate result of the Air Force's re-injection of the PFOA- and PFOS-contaminated water into the aquifer in violation of , groundwater in the Nut Plains Well, which is a source of drinking water in the Suburban-Rosemont water supply system operated by Cal-Am, became contaminated with PFOA and PFOS.

58.     The UIC regulations were intended to prevent the type of injury caused by the Air Force's improper re-injection of the PFOA- and PFOS-contaminated water into the aquifer using injection wells at the Mather Base.

59.     Cal-Am is one of the classes of persons the UIC regulations were designed to protect.

60.     Cal-Am first learned that the injection of PFOS- and PFOA-contaminated groundwater by the Air Force was the cause of the contamination of the Nut Plains Well in 2018 when it received a copy of a report, dated March 27, 2018, prepared on behalf of The Boeing Company at the request of the California Regional Water Quality Control Board, that reached this conclusion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1123686.16/SF

-17-

Case No.
COMPLAINT FOR DAMAGES

61.     The acts and omissions of the Air Force and its employees described herein constitute negligence per se under the laws of the State of California, including Cal. Evid. Code § 669.

62.     As a proximate result of the Air Force's negligence as alleged herein, Cal-Am suffered damages in the amount of $1,292,899.12, incurred in the acquisition and installation of the GAC system.  Moreover, during the first two years of operation of the GAC treatment system, Cal-Am suffered an additional $67,908.56 in damages, incurred as necessary costs of monitoring and testing the groundwater at the Nut Plains Well.

63.     Pursuant to the Federal Tort Claims Act, the United States is liable for these negligent acts and/or omissions.

Wherefore, Cal-Am prays for relief as set forth below.

## FIFTH CLAIM FOR RELIEF

(Trespass)

64.     Cal-Am realleges and incorporates the allegations of paragraphs 1 through 63 as though fully set forth herein.

65.     Cal-Am owns the Nut Plains Well and water utility assets that are the subject matter of this Complaint.

66.     The Air Force's use, handling, management, and/or disposal of AFFF containing PFOA and PFOS, its re-injection of PFOA- and PFOS-contaminated groundwater, and its failure to treat effluent from the Mather GET Systems for PFOA- and PFOS prior to re-injection into the groundwater until January 2018, all conducted without the exercise of due care, each caused PFOA and PFOS to contaminate the groundwater in Nut Plains Well.

67.     Cal-Am did not consent to the Air Force's acts or omissions which resulted in the contamination of Nut Plains Well groundwater with PFOA and PFOS.

68.     The acts and omissions of the Air Force and its employees described herein constitute a continuing trespass under the laws of the State of California.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

1123686.16/SF

-18-

Case No.
COMPLAINT FOR DAMAGES

69.     As a proximate result of the Air Force's actions constituting trespass, Cal-Am suffered damages in the amount of $1,292,899.12, incurred in the acquisition and installation of the GAC system.  Moreover, during the first two years of operation of the GAC treatment system, Cal-Am suffered an additional $67,908.56 in damages, incurred as necessary costs of monitoring and testing the groundwater at the Nut Plains Well.

70.     Pursuant to the Federal Tort Claims Act, the United States is liable for these negligent acts and/or omissions.

Wherefore, Cal-Am prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Cal-Am prays for judgment against Defendant as follows:

1.     For damages in the total amount of $1,360,807.68;

2.     For additional damages incurred by Cal-Am since the date of submission of the Administrative Claim to the Air Force, according to proof and as authorized by the Federal Tort Claims Act;

3.     For such other and further relief as the court deems just and proper.

Dated:  January 17, 2020

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID D. COOKE
KAMRAN JAVANDEL

By: _____
       DAVID D. COOKE
       Attorneys for Plaintiff
       CALIFORNIA-AMERICAN WATER
       COMPANY

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1123686.16/SF

-19-

Case No.
COMPLAINT FOR DAMAGES

# Exhibit A

TO COMPLAINT FOR DAMAGES UNDER

FEDERAL TORT CLAIMS ACT (28 U.S.C. §§ 2671-2680)

*CALIFORNIA-AMERICAN WATER COMPANY*

*V.*

*UNITED STATES OF AMERICA*

0.0/
 - /1-17-20/ /

7014 2870 0000 0633 1129
7014 2870 0000 0633 1129

US POSTAGE $19.10

ZIP 94111
011D11636845

OFFICIAL USE

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Postmark
Here

Sent To
United States Air Force
Street & Apt. No.,
or PO Box No. Claims & Tort Litigation Div.
1500 W. Perimeter Rd #1700
City, State, Joint Base Andrews, MD 20762

PS Form 3800, July 2014                See Reverse for Instructions

Allen Matkins Leck Gamble Mallory & Natsis LLP

Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
tel. 415.837.1515 | fax. 415.837.1516

www.allenmatkins.com

# Allen Matkins

To ⇨

United States Air Force
Claims & Tort Litigation Division
1500 W. Perimeter Road, Suite 1700
Joint Base Andrews, MD 20762

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:
United States Air Force
Claims and Tort Litigation
Division
1500 West Perimeter Rd #1700
Joint Base Andrews, MD 20762

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:       □ No

3. Service Type
   ☒ Certified Mail®        □ Priority Mail Express™
   □ Registered            □ Return Receipt for Merchandise
   □ Insured Mail          □ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)
7014 2870 0000 0633 1129

PS Form 3811, July 2013        Domestic Return Receipt

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>United States Air Force<br>Claims and Tort Litigation Division<br>1500 West Perimeter Road, Suite 1700<br>Joint Base Andrews, MD 20762. | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>California-American Water Company<br>655 W. Broadway, Suite 1410<br>San Diego, CA  92101<br>Contact: Timothy J. Miller, Senior Director |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒CIVILIAN | 4. DATE OF BIRTH<br>Formed 1965 | 5. MARITAL STATUS<br>N/A | 6. DATE AND DAY OF ACCIDENT<br>N/A | 7. TIME (A.M. OR P.M.)<br>N/A |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

Please see attached.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
Nut Plains Well is a groundwater supply well in Rancho Cordova, California, and part of claimant's Suburban-Rosemont drinking water system. The Well has been contaminated with per- and polyfluoroalkyl substances ("PFAS"), necessitating installation of a granular activated carbon treatment system.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
N/A.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Timothy J. Miller<br>S. Audie Foster<br>Timothy Hasler | California-American Water Company, 655 W. Broadway, Suite 1410, San Diego, CA  92101<br>California-American Water Company, 4701 Beloit Drive, Sacramento, CA  95838<br>California-American Water Company, 4701 Beloit Drive, Sacramento, CA  95838 |

| 12. (See instructions on reverse.) | | AMOUNT OF CLAIM (in dollars) | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>$1,360,807.68 | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$1,360,807.68 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form<br>619-446-4771 | 14. DATE OF SIGNATURE<br>2/19/2019 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95-109                                NSN 7540-00-634-4046                    STANDARD FORM 95
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE | | |
|---|---|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property | | |

15. Do you carry accident insurance?  ☒ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No

Insurance company: Travelers Property Casualty Company of America, c/o Marsh USA, Inc., 1166 Avenue of the Americas, New York, NY 10036
Policy number: TC2J-GLSA-260T3317

| 16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes   ☒ No | 17. If deductible, state amount. |
|---|---|
| Cal Am does not maintain an insurance policy that would cover the property damage that is the subject of this claim. | N/A |

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

N/A

19. Do you carry public liability and property damage insurance?  ☒ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

Insurance company: Travelers Property Casualty Company of America, c/o Marsh USA, Inc., 1166 Avenue of the Americas, New York, NY 10036

---

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

---

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

---

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95     BACK

Attachment for SF 95, Question 8
Basis of Claim

This attachment states the basis for claimant California-American Water Company's ("Cal Am") administrative claim to the United States Air Force ("Air Force").

## Summary

As further detailed in this claim, the Air Force's use of aqueous film-forming foam ("AFFF") at the former Mather Air Force Base ("MAFB") near Rancho Cordova, California from the 1970s to 1984, and the Air Force's re-injection of groundwater treated by air stripping from the late 1990s until 2018, proximately caused the contamination of Cal Am's "Nut Plains Well," a groundwater supply well owned and operated by Cal Am, with per- and polyfluoroalkyls ("PFAS"). This contamination constitutes a continuing nuisance and trespass under California law. *Arcade Water Dist. v. United States*, 940 F.2d 1265, 1267-68 (9th Cir. 1991) (leaching of contaminants from historic military activities constitutes continuing nuisance); *Mangini v. Aerojet-General Corp.*, 12 Cal. 4th 1087, 1097 (1996). The Air Force's re-injection of PFAS-contaminated groundwater violated the Underground Injection Control ("UIC") program regulations promulgated under the Safe Drinking Water Act, 40 C.F.R. § 144.1 *et seq.*, including without limitation 40 C.F.R. § 144.12, which prohibits any injection activity that allows the movement of fluid containing "any contaminant into underground sources of drinking water, if the presence of that contaminant may . . . adversely affect the health of persons." PFAS are "contaminants," the presence of which in drinking water may adversely affect human health, and the Air Force's long-term injection of PFAS-contaminated water allowed the movement of water containing PFAS into underground sources of drinking water. 40 C.F.R. § 144.3. In order to address the PFAS contamination of the Nut Plains Well, Cal Am installed a granular activated carbon ("GAC") treatment system at the Well in 2017, at an initial cost of $1,292,899.12. Cal Am has also incurred and will continue to incur costs of monitoring and testing of the GAC treatment system. As of the date of submission of this claim, monitoring and testing costs incurred by Cal Am within the past two years total $67,908.56.

## Background

The Nut Plains Well is a groundwater supply well that is part of Cal Am's Suburban-Rosemont drinking water supply system, which is a Community Water System (System No. CA3410010) pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f(15). The Nut Plains Well was installed in 1962. Cal Am acquired the Nut Plains Well from Citizens Utilities Company through an Asset Purchase Agreement dated October 15, 1999. (*See* excerpt of Asset Purchase Agreement dated Oct. 15, 1999, at Schedule 1.1.1(a), p. 6, attached hereto as **Exhibit A**.) Cal Am's purchase of the Nut Plains Well concluded on January 15, 2002. Since that time, Cal Am has operated the Nut Plains Well, a permitted drinking water source (PS Code 3410010-10) that has been used continuously for drinking water supply purposes from at least 2002 to 2016.

According to reports authored by or for the Air Force, the Air Force used AFFF containing two types of PFAS, perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA") in fire-fighting training and fire suppression exercises at MAFB from the early 1970s to about 1984. As acknowledged in the *Final Site Investigation Report, Former Fire Training Area FT011P* ("Final FT011P SIR"), these exercises likely resulted in releases of PFAS to surface soil, which leached into groundwater underlying the site. In 1993, MAFB was decommissioned

as an active air base under the Base Realignment and Closure Act ("BRAC"). Since 1996 or 1998, the Air Force has operated a groundwater extraction and treatment system at MAFB ("Mather GET") to treat a groundwater plume containing volatile organic compounds ("VOCs"). With the Mather GET, the Air Force treated VOC-contaminated groundwater via air stripping, and then re-injected the treated water through four injection wells into an aquifer. Air stripping is ineffective at removing PFAS. Cal Am extracts drinking water from this aquifer by operation of a number of supply wells, including the Nut Plains Well.

### PFAS Assessments and Regulatory History

For years before the United States Environmental Protection Agency ("EPA") published health advisories for PFAS, publically released assessments have connected the use of AFFF to PFAS, and have indicated that PFAS may be harmful to human health. In 2002, for instance, the Organisation for Economic Co-operation and Development published its *Hazard Assessment of Perfluorooctane Sulfonate (PFOS) and Its Salts*, which recommended further examination of PFOS, because studies indicated that PFOS was widespread and persistent in the environment, and that exposure was toxic to mammals and associated with bladder cancer. Also in 2002, EPA published the *Revised Draft Hazard Assessment of Perfluorooctonaic Acid and Its Salts*, which connected the presence of PFOA to AFFF used near fire-training areas, and discussed "statistically significant" associations between PFOA and health impacts. On January 4, 2005, EPA released a similar *Draft Risk Assessment of Potential Human Health Effects Associated with Perfluorooctonoic Acid (PFOA) and Its Salts*, which concluded that PFOS had "suggestive evidence of carcinogenicity." On May 30, 2006, a panel of EPA's Science Advisory Board ("SAB") released a public review of EPA's assessment, in which SAB concluded that PFOA was "likely to be carcinogenic."

In 2009, EPA's Office of Water developed and published a Provisional Health Advisory of 0.2 µg/L for PFOS (200 parts per trillion, or "ppt") and 0.4 µg/L for PFOA (400 ppt) (collectively, the "2009 HAs"), based on the potential toxicity of the chemicals to human health. On May 2, 2012, the EPA published its third Unregulated Contaminant Monitoring Regulations ("UCMR 3"), identifying PFOA and PFOS as unregulated contaminants to be monitored in public water systems. Shortly thereafter, on August 27, 2012, the Air Force released its *Interim Air Force Guidance on Sampling and Response Actions for Perfluorinated Compounds at Active and BRAC Installations*, which acknowledged that PFAS have a "demonstrated toxicity," stated the Air Force would exercise due diligence with regards to PFAS to protect human health, and established a process for assessing PFAS at Air Force restoration sites.

On May 25, 2016, the EPA released a new health advisory of 0.07 parts per billion (70 ppt) for a combined concentration of PFOA and PFOS (the "2016 HA"). Most recently, on June 26, 2018, the Division of Drinking Water of California's State Water Resources Control Board ("DDW") established a "notification level" of 14 ppt for PFOA and 13 ppt for PFOS, and a "Response Level" of 70 ppt for combined PFOA and PFOS.

### The Air Force's Knowledge of PFAS at the Mather Air Force Base

Numerous sampling activities conducted by the Air Force at MAFB after publication of the 2009 HA have demonstrated that PFAS were present in groundwater significantly in excess of EPA

advisory levels, and have associated the presence of PFAS to Air Force use of AFFF. The *MAFB Fourth Five-Year Review Report*, dated September 30, 2015 ("Fourth Review"), identified PFAS as "emerging contaminants" that present real or potential threats to human health, and recognized the presence of PFAS on MAFB. According to the Air Force, the Fourth Review indicates that the Air Force sampled the Mather GET and Site 7 treatment systems for PFOS and PFOA as early as 2014, which identified a PFOS detection at 0.279 μg/L, above the 2009 HA. As a result, the Fourth Review recommended the Air Force conduct follow-up sampling to determine the extent of PFAS in groundwater, potential risks from PFAS exposure, and appropriate remedies to address PFAS.

As further reported in the Final FT011P SIR, during March and April 2015 the Air Force's consultant Amec Foster Wheeler collected and tested twenty-nine grab groundwater samples from twenty existing groundwater monitoring wells at and in the vicinity of MAFB, as well as influent and effluent samples from the Mather GET, for PFOA and PFOS. Fourteen primary groundwater samples contained PFOA and PFOS above the 2009 HAs of 0.2 μg/L for PFOS and 0.4 μg/L for PFOA. The maximum concentration of PFOA was detected at 891 μg/L, and the maximum concentration of PFOS was detected at 19 μg/L, three and two orders of magnitude, respectively, above the 2009 HAs. PFOS and PFOA were also detected in treated and re-injected groundwater. (*See* figure of groundwater sampling results from Final FR011P SIR, attached hereto as **Exhibit B**.)

Furthermore, according to the *Draft Site Inspection Report for AFFF, Former MAFB*, dated August 2018 ("Draft AFFF SIR"), from December 2016 to July 2018 the Air Force installed two monitoring wells and collected groundwater samples, drinking water samples, and GET system samples. The results of these sampling efforts confirmed the presence of PFOS and PFOA in the Nut Plains Well (OFB-32). PFOS was detected at a maximum concentration of 107 ppt, and a maximum concentration of 122 ppt for combined PFOS and PFOA, in excess of the 2016 HA of 70 ppt (.07 μg/L). Sampling results also further confirmed the presence of PFOS and PFOA in groundwater across multiple areas of the MAFB, with numerous samples in designated areas of historical AFFF use exceeding the 2016 HA.

Despite notice of the toxicity of PFAS since at least the 2009 HA, and numerous testing results indicating that PFAS were present in groundwater and in GET system effluent in excess of health advisory levels as early as 2014, the Air Force continued to re-inject water treated by air stripping until early 2018, when the Air Force finally added GAC treatment to its MAFB GET system in order to avoid re-injection of PFAS-contaminated groundwater into area drinking water aquifers. The Air Force's re-injection of PFAS-contaminated groundwater violated UIC program regulations, including 40 C.F.R. § 144.12, which prohibits any injection activity that allows the movement of fluid containing "any contaminant into underground sources of drinking water, if the presence of that contaminant may . . . adversely affect the health of persons."

### Contamination at the Nut Plains Well

To comply with the UCMR3, Cal Am tested its groundwater supply wells for PFAS in October 2014 and April 2015, including the Nut Plains Well. When initial testing indicated that PFAS may be present in Nut Plains Well groundwater, Cal Am took the Well out of service. In August 2017, after confirming that PFAS were present in Nut Plains Well groundwater above the EPA's

health advisory levels, Cal Am installed and began operation of a GAC treatment system at the Nut Plains Well.

The Air Force's use of AFFF at MAFB resulted in the uncontrolled release of PFAS into the environment, and the eventual contamination of groundwater at and in the vicinity of MAFB. Moreover, the Air Force's extraction and reinjection of PFAS-contaminated groundwater is indisputably the proximate cause of the contamination of the Nut Plains Well with PFAS. A report commissioned by The Boeing Company in connection with an ongoing investigation by the California Regional Water Quality Control Board, Central Valley Region ("Regional Board"), concluded that the Air Force's re-injection of treated groundwater is the source of PFAS in the Nut Plains Well. (*See* March 27, 2018 Montgomery & Associates Report, attached hereto as **Exhibit C**.) Shortly thereafter, the Regional Board, by letter dated May 23, 2018, similarly concluded that the PFAS at Nut Plains Well originated from MAFB, and requested that the Air Force reimburse Cal Am for the installation and operating costs associated with the Nut Plains Well GAC system. (*See* May 23, 2018 Regional Board letter, attached hereto as **Exhibit D**.)

## Costs Incurred to Date

Cal Am incurred costs of $1,292,899.12 to install the GAC system. Tables summarizing total installation costs and detailing costs invoiced to Cal Am by its contractors are attached hereto as **Exhibit E**. Supporting invoices for each of Cal Am's three primary contractors are attached hereto as **Exhibit F**.

Cal Am has also incurred $67,908.56 in monitoring and testing costs in the past two years in connection with the Nut Plains Well GAC system. These costs were required by the operations and maintenance plan ("O&M Plan") approved by DDW for the GAC treatment system at Nut Plains Well. In particular, the O&M Plan required that Cal Am test and monitor GAC system influent and effluent for a wide range of regulated contaminants at various intervals within the first twelve weeks of system operation, required routine water quality monitoring for a wide range of regulated contaminants after the first twelve weeks of system operation, and required testing and monitoring of the bacteriological quality of water in the GAC system after system operation commenced. A table summarizing monitoring and testing costs incurred by Cal Am in connection with the Nut Plains Well GAC system is attached hereto as **Exhibit G**. Had the GAC treatment system not been installed, it would not have been necessary to incur any of these costs – including costs of testing and monitoring samples for contaminants other than PFOS or PFOA – and the GAC treatment system was necessitated solely by the PFAS contamination for which the Air Force is responsible.

Cal Am's investigation is ongoing, and Cal Am reserves the right to supplement this claim with additional documentation and information.

# EXHIBIT A

California

**<u>EXECUTION COPY</u>**

113723v1

**ASSET PURCHASE AGREEMENT**

among

**CITIZENS UTILITIES COMPANY
AND
CERTAIN OF ITS AFFILIATES**

**AND**

**AMERICAN WATER WORKS COMPANY, INC. AND
CALIFORNIA-AMERICAN WATER COMPANY**

**Dated as of**

**October 15, 1999**

California

# TABLE OF CONTENTS

Page

ARTICLE 1   DEFINITIONS .................................................... 1
    1.1   Certain Definitions ..................................................... 1

ARTICLE 2   THE TRANSACTION ............................................ 10
    2.1   Sale and Purchase of Assets .......................................... 10
    2.2   Excluded Assets ...................................................... 10
    2.3   Assumption of Certain Liabilities ..................................... 11
    2.4   Consent of Third Parties .............................................. 14
    2.5   Closing .............................................................. 14
    2.6   Purchase Price ....................................................... 15
        2.6.1   Purchase Price ............................................... 15
        2.6.2   Payment of Initial Cash Payment ............................. 15
        2.6.3   Estimated Closing Statement ................................. 15
        2.6.4   Post-Closing Adjustment to Purchase Price .................... 16
        2.6.5   Adjustment for Certain Liabilities ............................ 17
        2.6.6   Additional Adjustment to the Purchase Price ................... 18
    2.7   Deliveries and Proceedings at Closing ................................. 18
        2.7.1   Deliveries to Buyer .......................................... 18
        2.7.2   Deliveries By Buyer to the Seller Parties ...................... 19
    2.8   Allocation of Consideration ........................................... 19
    2.9   Prorations ........................................................... 19

ARTICLE 3   REPRESENTATIONS AND WARRANTIES OF SELLER .............. 20
    3.1   Qualification; No Interest in Other Entities ............................. 20
    3.2   Authorization and Enforceability ...................................... 20
    3.3   No Violation of Laws or Agreements ................................... 21
    3.4   Financial Statements .................................................. 21
    3.5   No Changes .......................................................... 22
    3.6   Contracts ............................................................ 23
    3.7   Permits and Compliance With Laws Generally .......................... 23
    3.8   Environmental Matters ................................................ 24
    3.9   Consents ............................................................. 26
    3.10   Title ................................................................. 26
    3.11   Real Estate ........................................................... 26
    3.12   Taxes ................................................................ 27
    3.13   Patents and Intellectual Property Rights ................................ 27
    3.14   Accounts Receivable .................................................. 27
    3.15   Labor Relations ....................................................... 27
    3.16   Employee Benefit Plans ............................................... 28
    3.17   Absence of Undisclosed Liabilities ..................................... 29
    3.18   No Pending Litigation or Proceedings .................................. 30

i

California

| | | | |
|---|---|---|---|
| 3.19 | Supply of Utilities | | 30 |
| 3.20 | Insurance | | 30 |
| 3.21 | Relationship with Customers | | 30 |
| 3.22 | WARN Act | | 31 |
| 3.23 | Condition of Assets | | 31 |
| 3.24 | Brokerage | | 31 |
| 3.25 | All Assets | | 31 |
| 3.26 | Year 2000 Matters | | 31 |
| **ARTICLE 4** | **REPRESENTATIONS AND WARRANTIES OF PARENT AND BUYER** | | 32 |
| 4.1 | Organization and Good Standing | | 32 |
| 4.2 | Authorization and Enforceability | | 32 |
| 4.3 | No Violation of Laws or Agreements | | 33 |
| 4.4 | Consents | | 33 |
| 4.5 | Financing | | 33 |
| 4.6 | Brokerage | | 34 |
| 4.7 | Insurance | | 34 |
| **ARTICLE 5** | **ADDITIONAL COVENANTS** | | 34 |
| 5.1 | Conduct of Business | | 34 |
| 5.2 | Negotiations | | 35 |
| 5.3 | Disclosure Schedules | | 36 |
| 5.4 | Mutual Covenants | | 36 |
| 5.5 | Filings and Authorizations | | 37 |
| 5.6 | Public Announcement | | 37 |
| 5.7 | Further Assurances | | 38 |
| 5.8 | Cooperation | | 38 |
| 5.9 | Employees; Employee Benefits | | 39 |
| 5.10 | Employee Pension Plan | | 42 |
| 5.11 | Employee Savings Plan | | 42 |
| 5.12 | Welfare Benefits | | 43 |
| 5.13 | Taxes | | 44 |
| 5.14 | Intentionally Omitted | | 45 |
| 5.15 | Citizens' Guarantees and Surety Instruments | | 45 |
| 5.16 | Assumption of Seller Debt | | 45 |
| 5.17 | Schedule of Permits | | 45 |
| 5.18 | Title Information | | 45 |
| 5.19 | Transaction with Related Parties | | 45 |
| 5.20 | Approval by Citizens | | 46 |
| 5.21 | Supplemental Information | | 46 |
| 5.22 | Non-Competition | | 46 |
| 5.23 | Intentionally Omitted. | | 46 |
| 5.24 | Intentionally Omitted | | 46 |

ii

California

|  | 5.25 | Cooperation with Respect to Like-Kind Exchange | 46 |
|  | 5.26 | Transition Plan | 47 |
|  | 5.27 | Procedures regarding Refunds of Advances | 47 |
|  | 5.28 | Title Insurance | 47 |
| ARTICLE 6 | | CONDITIONS PRECEDENT; TERMINATION | 48 |
|  | 6.1 | Conditions Precedent to Obligations of Buyer and Parent | 48 |
|  |  | 6.1.1 Performance of Agreements; Representations and Warranties | 48 |
|  |  | 6.1.2 Opinion of Counsel | 49 |
|  |  | 6.1.3 HSR Act | 49 |
|  |  | 6.1.4 Required PUC and Other Consents | 49 |
|  |  | 6.1.5 Injunction; Litigation | 49 |
|  |  | 6.1.6 Documents | 49 |
|  |  | 6.1.7 Related Closings | 49 |
|  | 6.2 | Conditions Precedent to Obligations of Seller Parties | 50 |
|  |  | 6.2.1 Performance of Agreements; Representations and Warranties | 50 |
|  |  | 6.2.2 Opinion of Counsel | 50 |
|  |  | 6.2.3 HSR Act | 50 |
|  |  | 6.2.4 Required PUC and Other Consents | 50 |
|  |  | 6.2.5 Injunction; Litigation | 51 |
|  |  | 6.2.6 Documents | 51 |
|  |  | 6.2.7 Related Closings | 51 |
|  | 6.3 | Termination | 51 |
| ARTICLE 7 | | CERTAIN ADDITIONAL COVENANTS | 52 |
|  | 7.1 | Certain Taxes and Expenses | 52 |
|  | 7.2 | Maintenance of Books and Records | 52 |
|  | 7.3 | Survival | 52 |
|  | 7.4 | Indemnification | 55 |
|  |  | 7.4.1 General Indemnification Obligations | 55 |
|  |  | 7.4.2 General Indemnification Procedures | 56 |
|  |  | 7.4.3 Indemnification for Negligence | 59 |
|  | 7.5 | UCC Matters | 59 |
|  | 7.6 | Financial Statements | 59 |
|  | 7.7 | Collection of Receivables | 60 |
| ARTICLE 8 | | MISCELLANEOUS | 60 |
|  | 8.1 | Construction | 60 |
|  | 8.2 | Notices | 61 |
|  | 8.3 | Successors and Assigns | 62 |
|  | 8.4 | Exhibits and Schedules | 62 |
|  | 8.5 | Governing Law | 63 |
|  | 8.6 | Dispute Resolution | 63 |

iii

California

| 8.7 | Severability | 64 |
|---|---|---|
| 8.8 | No Third Party Beneficiaries | 64 |
| 8.9 | Entire Agreement | 64 |
| 8.10 | Amendment and Waiver | 65 |
| 8.11 | Counterparts | 65 |
| 8.12 | Headings | 65 |
| 8.13 | Definitions | 65 |
| 8.14 | No Implied Representation | 65 |
| 8.15 | Construction of Certain Provisions | 66 |
| 8.16 | Bulk Sales | 66 |

iv

California

## List of Schedules

Schedule 1.1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Real Estate
Schedule 1.1.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Assumed Indebtedness
Schedule 2.2.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Excluded Assets
Schedule 2.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Purchase Price
Schedule 3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . No Violation of Laws or Agreements
Schedule 3.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Financial Statements
Schedule 3.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . No Changes
Schedule 3.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Contracts
Schedule 3.7 . . . . . . . . . . . . . . . . . . . . . Permits and Compliance with Laws Generally
Schedule 3.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . Environmental Matters - Generally
Schedule 3.8.10 . . . . . . . . . . . . . . . . . . . . . . . . . . Compliance with Water Standards
Schedule 3.8.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Deed Restriction
Schedule 3.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Seller Parties' Consents
Schedule 3.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Title
Schedule 3.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Real Estate Proceedings
Schedule 3.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Taxes
Schedule 3.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Labor Relations
Schedule 3.16.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Employee Benefit Plans
Schedule 3.16.4. . . . . . . . . . . . . . . . . . . . . . . . . . Employee Benefit Plans - Compliance
Schedule 3.16.9. . . . . . . . . . . . . . . . . . Employee Benefit Plans - Extraordinary Benefits
Schedule 3.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . Absence of Undisclosed Liabilities
Schedule 3.18 . . . . . . . . . . . . . . . . . . . . . . . . . No Pending Litigation or Proceedings
Schedule 3.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supply of Utilities
Schedule 3.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Seller's Insurance
Schedule 3.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . WARN Act
Schedule 3.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Condition of Assets
Schedule 3.25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . All Assets
Schedule 3.27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Product Liability
Schedule 4.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Buyer's Insurance
Schedule 5.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Conduct of Business
Schedule 5.9.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Employees
Schedule 5.9.2 . . . . . . . . . . . . . . . . . . . . . . . . . Collective Bargaining Agreements
Schedule 5.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Former Employees
Schedule 5.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Citizens' Guarantees
Schedule 5.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Schedule of Permits
Schedule 6.1.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Related Purchase Agreements

v

California

## TABLE OF EXHIBITS

Exhibit A   -   Form of Assumption Agreement

Exhibit B   -   Form of Assignment and Bill of Sale

Exhibit C   -   Intentionally Omitted

Exhibit D   -   Intentionally Omitted

Exhibit E   -   Form of Seller's Opinion of Counsel

Exhibit F   -   Form of Buyer's Opinion of Counsel

vi

California

# ASSET PURCHASE AGREEMENT

THIS IS AN ASSET PURCHASE AGREEMENT (the "Agreement"), dated as of October 15, 1999, by and among Citizens Utilities Company, a Delaware corporation ("Citizens"), and each of the wholly-owned subsidiaries of Citizens named on the signature page hereof (collectively with Citizens, "Seller" or the "Seller Parties"), and American Water Works Company, Inc., a Delaware corporation ("Parent"), and California-American Water Company, a California corporation ("Buyer").

### Background

A.     Citizens Utilities Company of California is a public utility engaged, among other things, in the business of storing, supplying, distributing and selling water to the public, wholesale water transmission, and related services and activities in the State of California (the "Business").

B.     Parent is a holding company which desires to cause the Buyer to purchase substantially all of the assets, properties and rights of the Seller Parties relating to the Business, and Seller desires to sell, and to cause the sale of, such assets, properties and rights, on the terms and subject to the conditions set forth in this Agreement.

### Terms

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

### ARTICLE 1

### DEFINITIONS

1.1    Certain Definitions. As used in this Agreement, the following terms shall have the respective meanings ascribed to them in this Section:

1.1.1  "Acquired Assets" means, subject to Section 2.2, all of each Seller Party's right, title, and interest in, under and to all of the assets, properties and rights exclusively used in the Business as a going concern of every kind, nature and description existing on the Closing Date, wherever such assets, properties and rights are located and whether such assets, properties and rights are real, personal or mixed, tangible or intangible, and whether or not any of such assets, properties and rights have any value for accounting purposes or are carried or reflected on or specifically referred to in Seller's books or financial statements, including all of the assets, properties and rights exclusively relating to the Business enumerated below:

(a)     all real property described in Schedule 1.1.1(a), together with all fixtures, fittings, buildings, structures and other improvements erected thereon, and easements,

36

California

rights of way, water lines, rights of use, licenses, railroad crossing agreements, hereditaments, tenements, privileges and other appurtenances thereto or otherwise exclusively related to the Business (such as appurtenant rights in and to public streets) (the "Real Estate");

(b)     to the extent not included in clause (a) above, all water tanks, reservoirs, water works, plant and systems, purification and filtration systems, pumping stations, pumps, wells, mains, water pipes, hydrants, equipment, machinery, vehicles, tools, dies, spare parts, materials, water supplies, fixtures and improvements, construction in progress, jigs, molds, patterns, gauges and production fixtures and other tangible personal property, in transit or otherwise, used exclusively in the Business (the "Equipment and Other Tangible Personal Property");

(c)     notwithstanding the provisions of Section 2.2 but subject to Section 2.4, all of Seller's water appropriation and flowage rights to the extent not transferred to Buyer upon assignment of the Contracts and Permits to Buyer;

(d)     all notes receivable, accounts receivable, accrued utility revenues, materials and supplies (at average cost net of reserve for obsolescence) and prepayments attributable in each case exclusively to the Business;

(e)     all unamortized debt expense related to the Assumed Indebtedness, deferred capital costs, and other deferred charges (excluding deferred taxes collectable) attributable exclusively to the Business of which recovery in future rates is probable;

(f)     Intellectual Property and goodwill, licenses and sublicenses granted and obtained with respect thereto;

(g)     subject to Section 2.4 hereof, (i) contracts, commitments, agreements and instruments relating to the sale of any assets, services, properties, materials or products, including all customer contracts, operating contracts and distribution contracts relating exclusively to the conduct of the Business; (ii) orders, contracts, supply agreements and other agreements relating exclusively to the purchase of any assets, services, properties, materials, or products for the Business; (iii) all leases of Real Estate exclusively related to the Business; (iv) all other contracts, agreements and instruments related exclusively to the Business (other than contracts, agreements and instruments included in the definition of Real Estate or Permits); and (v) any such contracts, agreements and other instruments referred to in clauses (i) - (iv) inclusive, entered into between the date hereof and the Closing Date which are consistent with the terms of this Agreement and are entered into in the ordinary course of business consistent with past practice, and including in the case of clauses (i) - (iv) all such contracts, agreements and instruments more specifically listed or described in Schedule 3.6 (and specifically including one Collective Bargaining Agreement to the extent provided in Section 5.9.2, but specifically excluding any contract, agreement and instrument listed or described on Schedule 2.2.12) (the "Contracts");

2

California

(h)    subject to Section 2.4 hereof. franchises. approvals. permits. authorizations, licenses, orders, registrations, certificates, variances, and other similar permits or rights obtained from any Authority relating exclusively to the conduct of the Business and all pending applications therefor (the "Permits");

(i)    books, records, ledgers, files, documents (including originally executed copies of written Contracts, to the extent available, and copies to the extent not available), correspondence, Tax returns relating exclusively to the Business, memoranda, forms, lists, plats, architectural plans, drawings, and specifications, new product development materials, creative materials, advertising and promotional materials, studies, reports, sales and purchase correspondence, books of account and related records relating to the Transferred Employees (to the extent such transfer is not prohibited by law), photographs, records of plant operations and materials used, quality control records and procedures, equipment maintenance records, manuals and warranty information, research and development files, data and laboratory books, inspection processes, in each case, whether in hard copy or magnetic format, in each instance, to the extent exclusively relating to the Business, the Acquired Assets or the Transferred Employees;

(j)    all rights or choses in action arising out of occurrences before or after the Closing Date and exclusively related to any of the Acquired Assets, including third party warranties and guarantees and all related claims, credits, rights of recovery, and set-off and other similar contractual rights, as to third parties held by or in favor of Seller; provided, however, that (notwithstanding the foregoing provisions of this Section 1.1.1(j)), to the extent that Seller pays or discharges a liability related to the Business or any of the Acquired Assets and related to such right or chose in action (whether by reason of indemnification under this Agreement or otherwise), Buyer will reassign or reconvey to Seller such right or chose in action to the extent that such right or chose in action relates to a recovery of amounts paid to Buyer; and

(k)    all rights to insurance and condemnation proceeds (i) to the extent relating to the damage, destruction, taking or other impairment of the Acquired Assets which damage, destruction, taking or other impairment occurs on or prior to the Closing but only to the extent that the proceeds exceed the amount of the write-down of the net book value of such Acquired Assets on the books and records of Seller as a result of such damage, destruction, taking or other impairment and (ii) to the extent they relate to amounts paid by Buyer for Damages to the extent Buyer does not receive payment pursuant to Section 7.4.1(a), but only to the extent Buyer is entitled to indemnification by Seller pursuant to Sections 7.3 and 7.4.

1.1.2    "Adjusted Net Assets" has the meaning set forth in Section 2.6.4(a) hereof.

1.1.3    "Affected Participant" has the meaning set forth as Section 5.11.1 hereof.

3

California

      1.1.4   "Affiliate" of any Person means any Person, directly or indirectly controlling, controlled by or under common control with such Person.

      1.1.5   "Agreement" has the meaning set forth in the introduction hereof.

      1.1.6   "American Pension Plan" has the meaning set forth in Section 5.10.1 hereof.

      1.1.7   "American Savings Plan" has the meaning set forth in Section 5.11.1 hereof.

      1.1.8   "Antitrust Division" has the meaning set forth in Section 5.5 hereof

      1.1.9   "Assumed Benefit Liabilities" has the meaning set forth in Section 3.16.6 hereof.

      1.1.10   "Assumed Indebtedness" means the liabilities and obligations from and after the Closing Date (except as set forth below) with respect to the loan document listed as item I.L.1 of Schedule 3.6 with respect to the indebtedness of Citizens Utilities Company of California owed to the State of California Department of Water Resources (the "California Water Debt"), to the extent assumed by Buyer.  For purposes of clarity, except as set forth in the next sentence below, "Assumed Indebtedness" shall not include any liability or obligation to the extent accrued prior to the Closing Date or to the extent arising out of or relating to an event, circumstance or occurrence prior to the Closing Date.  "Assumed Indebtedness" shall include the outstanding principal amount and the accrued but unpaid interest owed by Seller on the debt obligations set forth in the first sentence of this definition, if such debt obligations are assumed by Buyer..

      1.1.11   "Assumed Liabilities" has the meaning set forth in Section 2.3 hereof.

      1.1.12   "Assumption Agreement" has the meaning set forth in Section 2.3.2 hereof.

      1.1.13   "Authority" means any federal, state, local or foreign governmental or regulatory entity (or any department, agency, authority or political subdivision thereof).

      1.1.14   "Base Cash Purchase Price" has the meaning set forth in Section 2.6.1 hereof.

      1.1.15   "Beneficiary" means the Person(s) designated by an Employee, by operation of law or otherwise, as entitled to compensation, benefits, insurance coverage, payments or any other goods or services under a Benefit Plan.

<div align="center">4</div>

California

1.1.16  "Benefit Plans" has the meaning set forth in Section 3.16.1 hereof.

1.1.17  Intentionally Omitted.

1.1.18  "Business" has the meaning set forth in the Background section hereof.

1.1.19  Business Day" means any day other than a Saturday, Sunday, or a day on which banking institutions in the Commonwealth of Pennsylvania are authorized or obligated by law or executive order to close.

1.1.20  "Buyer" has the meaning set forth in the introduction hereof.

1.1.21  Intentionally Omitted.

1.1.22  "Buyer's Accountants" means PricewaterhouseCoopers LLP or any firm of independent public accountants hereafter designated by Buyer for purposes of this Agreement.

1.1.23  Intentionally Omitted

1.1.24  "Ceiling" has the meaning set forth in Section 7.4.2(e) hereof.

1.1.25  "CERCLA" has the meaning set forth in Section 3.8.2 hereof.

1.1.26  "CERCLIS" has the meaning set forth in Section 3.8.7 hereof.

1.1.27  "Citizens" has the meaning set forth in the introduction hereof.

1.1.28  "Closing" has the meaning set forth in Section 2.5 hereof.

1.1.29  "Closing Date" has the meaning set forth in Section 2.5 hereof.

1.1.30  "Closing Statement of Net Assets" has the meaning set forth in Section 2.6.4(a) hereof.

1.1.31  "Code" means the Internal Revenue Code of 1986, as amended.

1.1.32  "Collective Bargaining Agreement" means the agreement identified as such on Schedule 3.6 hereto.

1.1.33  "Competing Transaction" has the meaning set forth in Section 5.2.

1.1.34  "Contracts" has the meaning set forth in Section 1.1.1(g) hereof.

5

California

1.1.35  "Control" with respect to any Person means the ownership, directly or indirectly, of at least a majority of the voting power of each class of capital stock of such Person entitled to vote in the election of directors of such Person generally.

1.1.36  "Damages" has the meaning set forth in Section 7.4.1 hereof.

1.1.37  "Disclosure Schedules" means the Schedules referenced in Articles 3, 4 and 5 of this Agreement, as amended or supplemented pursuant to Section 5.3.

1.1.38  "Dispute" has the meaning set forth in Section 8.6.

1.1.39  "Employees" has the meaning set forth in Section 5.9.1 hereof.

1.1.40  "Environmental Laws" has the meaning set forth in Section 3.8 hereof.

1.1.41  "Equipment and Other Tangible Personal Property" has the meaning set forth in Section 1.1.1(b) hereof.

1.1.42  "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.1.43  "ERISA Affiliate" means (a) any corporation included with any of the Seller Parties in a controlled group of corporations within the meaning of Section 414(b) of the Code; (b) any trade or business (whether or not incorporated) which is under common control with any of the Seller Parties within the meaning of Section 414 of the Code; any member of an affiliated service group of which any of the Seller Parties is a member within the meaning of Section 414(m) of the Code; or (d) any other person or entity treated as an affiliate of any of the Seller Parties under Section 414(o) of the Code.

1.1.44  "Excluded Assets" has the meaning set forth in Section 2.2 hereof.

1.1.45  "Financial Statements" has the meaning set forth in Section 3.4 hereof.

1.1.46  "FIRPTA Affidavit" has the meaning set forth in Section 2.7.1 hereof.

1.1.47  "Former Employees" means all salaried and hourly employees once employed by Seller or any of its Affiliates, but who are no longer so employed on the Closing Date.

1.1.48  "FTC" has the meaning set forth in Section 5.5 hereof.

1.1.49  "GAAP" has the meaning set forth in Section 3.4 hereof.

1.1.50  "Hazardous Substance" has the meaning set forth in Section 3.8 hereof.

6

California

1.1.51  "HSR Act" has the meaning set forth in Section 3.9 hereof.

1.1.52  Intentionally Omitted.

1.1.53  Intentionally Omitted.

1.1.54  "Indemnified Party" has the meaning set forth in Section 7.4.2(a) hereof.

1.1.55  "Indemnifying Party" has the meaning set forth in Section 7.4.2(a) hereof.

1.1.56  "Intellectual Property" means the trademarks, patents, trade names and copyrights and applications therefor, inventions, trade secrets, and confidential business information (including know-how, formulas, water filtration, purification and pumping processes and techniques, technical data, designs, drawings, customer and supplier lists, and business and marketing plans and proposals), all computer software (including data and related documentation and object and source codes), whether in magnetic format or hard copy, and tangible embodiments thereof (in whatever form or medium) of Seller, in each case, utilized exclusively in the Business.

1.1.57  "Interim Statement of Net Assets" means the Citizens Water Resources Statement of Net Assets - California, June 30, 1999, which is attached hereto as Schedule 3.4.

1.1.58  "Interim Statement of Net Assets Date" means June 30, 1999.

1.1.59  "IRS" has the meaning set forth in Section 3.16.2 hereof.

1.1.60  "Lien" means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security agreement, right of first refusal, option, restriction, tenancy, license, right of way, easement or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or statute or law of any jurisdiction).

1.1.61  "Material Adverse Effect" means a change or effect (or series of related changes or effects) which has or is reasonably likely to have a material adverse change in or effect upon the business, assets, condition (financial or otherwise), or results of operations of the Business or the Acquired Assets, taken as a whole and taken together with the businesses and assets being acquired by Buyer or Affiliates of Buyer pursuant to the Related Purchase Agreements. For purpose of this Agreement, an occurrence or condition shall not constitute a Material Adverse Effect (a) if it arises from general business, economic or financial market conditions, from conditions generally effecting the industries in which Seller competes, or from the transactions contemplated by this Agreement, or (b) to the extent that it consists of strikes, work stoppages, walk-outs, slow-downs or other business interruption at the facilities in California that are part of the Acquired

7

California

Assets, or (c) solely with respect to matters arising prior to Closing, to the extent that either (i) Seller realizes the benefit of insurance maintained by Citizens on or prior to the Closing Date and Buyer receives the cash proceeds of such insurance to the extent required by Section 1.1.1(k), or (ii) Seller arranges for Buyer to recover payments in respect of such occurrence or condition from any other source (whether in a lump sum or stream of payments), it being understood and agreed that a Material Adverse Effect may have occurred irrespective of such insurance recovery if the occurrence or condition giving rise to such recovery also causes a non-monetary material adverse change in or effect upon the Business or the Acquired Assets, taken as a whole and taken together with the businesses and assets being acquired by Buyer or Affiliates of Buyer pursuant to the Related Purchase Agreements.

      1.1.62  "Mortgage Indenture" means Indenture of Mortgage and Deed of Trust between BNY Western Trust Company (successor in interest to Wells Fargo Bank, N.A.) and First Interstate Bank of California (as successor trustee to Marine Midland, N.A., formerly the Marine Midland Trust Company of New York).

      1.1.63  "OSHA" has the meaning set forth in Section 3.7.1 hereof.

      1.1.64  "PCBs" has the meaning set forth in Section 3.8.6 hereof.

      1.1.65  "Permits" has the meaning set forth in Section 1.1.1(h) hereof.

      1.1.66  "Permitted Exceptions" has the meaning set forth in Section 3.10 hereof; provided, however, that from and after the Closing, Permitted Exceptions shall not include any Lien arising under or resulting from the Mortgage Indenture.

      1.1.67  "Person" means an individual, a corporation, a partnership, an association, an Authority, a trust or other entity or organization.

      1.1.68  "Pre-Existing Conditions" has the meaning set forth in Section 2.3.1(d).

      1.1.69  "Prime Rate" means the rate per annum announced from time to time during the reference period by Citibank N.A. as its United States prime, reference or base rate for commercial loans.

      1.1.70  "PUC" has the meaning set forth in Section 5.5 hereof.

      1.1.71  "Purchase Price" has the meaning set forth in Section 2.6.1 hereof.

      1.1.72  "Real Estate" has the meaning set forth in Section 1.1.1(a) hereof.

      1.1.73  "Recovery" has the meaning set forth in Section 7.4.2(l) hereof.

<center>8</center>

California

1.1.74   "Related Purchase Agreements" as the meaning set forth in Section 6.1.7 hereof.

1.1.75   "Release" or "Released" has the meaning set forth in Section 3.8 hereof.

1.1.76   "Remedial Action" has the meaning set forth in Section 3.8 hereof.

1.1.77   Intentionally Omitted.

1.1.78   "Retained Liabilities" has the meaning set forth in Section 2.3 hereof.

1.1.79   "Review Period" has the meaning set forth in Section 2.6.4(b) hereof.

1.1.80   "SEC" means the U.S. Securities and Exchange Commission.

1.1.81   "Securities Filings" has the meaning set forth in Section 5.8.2 hereof.

1.1.82   "Seller" and "Seller Parties" have the respective meaning set forth in the introduction hereof.

1.1.83   "Seller's Accountants" means KPMG LLP or any other firm of independent public accountants hereafter designated by Seller for purposes of this Agreement.

1.1.84   "Seller's Adjusted Amount" has the meaning set forth in Section 2.6.4(a) hereof.

1.1.85   "Seller's Pension Plan" has the meaning set forth in Section 5.10.1 hereof.

1.1.86   "Seller's 401(k) Plan" has the meaning set forth in Section 5.11.1 hereof.

1.1.87   "Specified Liabilities" has the meaning set forth in Section 7.4.2(f) hereof.

1.1.88   "Taxes" means any federal, state, local and foreign income, payroll, withholding, excise, sales, use, personal property, use and occupancy, business and occupation, mercantile, real estate, gross receipts, license, employment, severance, stamp, premium, windfall profits, social security (or similar unemployment), disability, transfer, registration, value added, alternative, or add-on minimum, estimated, or capital stock and franchise and other tax of any kind whatsoever, including any interest, penalty or addition thereto, whether disputed or not.

9

California

      1.1.89  "Third Accounting Firm" has the meaning set forth in Section 2.6.4(b) hereof.

      1.1.91  "Threshold Amount" has the meaning set forth in Section 7.4.2(e) hereof.

      1.1.92  "Third Party Claim" has the meaning set forth in Section 7.4(b)(i) hereof.

      1.1.93  "Transferred Accounts" has the meaning set forth in Section 5.11.2 hereof.

      1.1.94  "Transaction Documents" has the meaning set forth in Section 3.2 hereof.

      1.1.95  "Transferred Employees" has the meaning set forth in Section 5.9.2 hereof.

      1.1.96  "Union Employees" has the meaning set forth in Section 5.9.1 hereof.

      1.1.97  "VEBAs" has the meaning set forth in Section 5.12 hereof.

      1.1.98  "WARN Act" means the Worker Adjustment and Retraining Notification Act, as codified at 29 U.S.C. section 2102- 2109, as amended.

## ARTICLE 2

## THE TRANSACTION

      2.1  <u>Sale and Purchase of Assets</u>.  Subject to the terms and conditions of this Agreement, at the Closing referred to in Section 2.5 below, Citizens shall, and shall cause the other Seller Parties to, sell, assign, transfer, deliver and convey to Buyer, and Parent shall cause Buyer to purchase, the Acquired Assets for the Purchase Price specified in Section 2.6.

      2.2  <u>Excluded Assets</u>.  The following assets of Seller shall be excluded from the Acquired Assets (the "Excluded Assets"):

      2.2.1  assets of the Seller used in both the Business and in Citizens' gas, electric or communications businesses, the material items of which are described on Schedule 2.2.12;

      2.2.2  cash and cash equivalents in transit, in hand or in bank accounts.

10

California

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the day and year first written above.

**CITIZENS UTILITIES COMPANY**

By: _____

    Robert J. DeSantis, Chief Financial Officer, Vice President and Treasurer

**CITIZENS BUSINESS SERVICES COMPANY**
**CITIZENS RESOURCES COMPANY**
**CITIZENS UTILITIES COMPANY OF CALIFORNIA**

By: _____

    Robert J. DeSantis, Vice President

**AMERICAN WATER WORKS COMPANY, INC.**

By: _____

    Joseph F. Hartnett, Jr., Treasurer

**CALIFORNIA-AMERICAN WATER COMPANY**

By: _____

    Theodore Jones, Jr., President

California

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the day and year first written above.

**CITIZENS UTILITIES COMPANY**

By: _____

    Robert J. DeSantis, Chief Financial Officer, Vice President and Treasurer

**CITIZENS BUSINESS SERVICES COMPANY**
**CITIZENS RESOURCES COMPANY**
**CITIZENS UTILITIES COMPANY OF CALIFORNIA**

By: _____

    Robert J. DeSantis, Vice President

**AMERICAN WATER WORKS COMPANY, INC.**

By: _____

    Joseph F. Hartnett, Jr., Treasurer

**CALIFORNIA-AMERICAN WATER COMPANY**

By: _____

    Theodore Jones, Jr., President

## SCHEDULE 1.1.1(a)

## REAL ESTATE

1.   Misc. Property, Felton Quarry Access, 0.624 acres, State Assessed Property Parcel No. 284-44-40, California, owned by Citizens Resources Company.

2.   Misc. Property, Two Parcels as described in a Grant Deed recorded in Book 2155 Page 532, Santa Cruz County, California, owned by Citizens Resources Company.

3.   Montara Reservoir Site, 11.75 acres, San Mateo County parcel No. 036 180 030, California, owned by Citizens Resources Company.

4.   See attached list of Real Property.

CALIFORNIA
Real Estate Attachment
Page 1 of 14

SONOMA / LARKFIELD
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-49-5  1 & 2 | 058-202-  004 | Larkfield    Well Site    No. 1 |
| 1284-49-2  1 | 058-080-  048 | Larkfield    Well Site    No. 2 & 3 |
| 1284-49-1  1 & 2 | 039-025-  066 | Larkfield    Well Site    No. 4 and  Filter Plant |
| 1284-49-6  1 & 2 | 039-160-  006 | Wikiup Tank Site |
| 1284-49-8  1 | 039-150-  011 | Upper Wikiup Tank Site |
| 1284-49-7-1 | 039-034-  008 | North Wikiup Tank Site |
| 1284-49-4-1 | 058-090-  023 | Larkfield Well Site No. 6 |
| 1284-49-3-1 | 058-090-  016 | Larkfield Well Site No. 5 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CWRC Engineering Dept.                    Updated on 10/11/99                    Printed on 10/17/99 at 9:56 AM

CALIFORNIA
Real Estate Attachment
Page 2 of 14

SAN MATEO / MONTARA
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| | | Wagner Well Site No. 2 |
| N/A | 036-180-130 | Wagner Well Site No. 3 |
| N/A | 036-086-020 | Park Well Site |
| N/A | 036-164-030 | Drake Well Site |
| | | Montara Creek |
| N/A | 036-144-020 | Montara Main Reservoir |
| | | Montara Commercial Office |
| N/A | 037-022-070 | Schoolhouse Booster Station Site |
| N/A | 037-071-090 | Moss Beach Tank Site |
| N/A | 037-244-160 | Oak Street Well Site |
| N/A | 036-231-130 | Portola Estates Well Site No. 1 |
| N/A | 036-194-130 | Portola Estates Well Site No. 2 |
| N/A | 036-194-140 | Portola Estates Well Site No. 3 |
| N/A | 036-225-180 | Portola Estates Well Site No. 4 |
| N/A | 036-210-200 | Portola Estates Tank Site |
| | | Airport Well No. 3 |
| | | Airport Well No. 4 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SACRAMENTO/LINCOLN OAKS AND ROYAL OAKS
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS | |
|---|---|---|---|
| 1284-34-6-1 | 211-0304-010-0000 | GLASS SLIPPER WELL SITE | 7114 GLASS SLIPPER |
| 1284-34-4-1 | 232-0102-002-0000 | LINDA SUE WELL SITE NO. 1 | 6757 LINDA SUE WAY |
| 1284-34-13-1 | 211-0382-029-0000 | KITTERY WELL SITE | 7001 DURHAM |
| 1284-34-3-1 | 232-0143-019-0000 | LAUREL OAKS WELL SITE | 6931 LAUREL OAKS |
| 1284-34-7-1 | 203-0173-008-0000 | DAVIDSON WELL SITE | 7652 32ND STREET |
| 1284-34-5-1 | 204-0311-012-0000 | OAKBERRY WELL SITE | 7117 OAKBERRY WAY |
| 1284-34-12-1 | 203-0131-009-0000 | SCOTLAND WELL SITE | 7900 RUDYYARD CIRCLE |
| 1284-34-14-1 | 209-0163-022-0000 | TREELARK WELL SITE | 6849 TREELARK WAY |
| 1284-31-2-1 | 023-301-004-0000 | VANDENBERG WELL SITE | EASEMENT |
| 1284-34-8-1 | 229-0133-012-0000 | LEMANS DRIVE WELL SITE | 6825 GREENBACK LANE |
| 1284-34-16-1 | 229-0145-007-0000 | HALIFAX WELL SITE | 6449 AUBURN BLVD. |
| 1284-34-120-1 | 203-0244- 061-0000 | ROTTERDAM WELL SITE | 2403 COVERED WAGON CIR. |
| 1284-34-120-2 | 203-0224- 060-0000 | ROTTERDAM WELL SITE | 2403 COVERED WAGON CIR. |
| 1284-34-2-1 | 204-0144-005-0000 | OAK FOREST WELL SITE | 7850 OAK FORREST |
| 1284-34-17-1 | 209-0204-002-0000 | PINE CREEK WELL SITE | 6110 PINE CREEK WAY |
| 1284-34-10-1 | 204-0582-019-0000 | SANDLEWOOD WELL SITE | 8272 CORDELIA CIRCLE |
| 1284-34-11-1 | 211-0371-001-0000 | CARRIAGE DRIVE WELL SITE | 7307 CARRIAGE WAY |
| 1284-34-18-1 | 229-0523-009-0000 | VAN MAREN LANE WELL SITE | |
| 1284-34-21-1 | 203-0050-024-0000 | RHINE WAY WELL SITE | 2539 RHINE WAY |
| 1284-34-20-1 | 209-0360-056-0000 | 8347 VILLA VIEW DRIVE / VILLA VIEW DRIVE WELL SITE | |
| 1284-34-22-1 | 229-0580-013-0000 | CROSSWOODS CIRCLE WELL SITE | 6551 CROSSWOODS CIRCLE |
| 1284-34-88-2 | 203-0193-016-0000 | COLONNADE WAY WELL SITE | |
| 1284-34-137-1 | 203-0620-049-0000 | BELLINGRATH WELL SITE | |
| 1284-34-93-1 | 211-0610-059-0000 | TWIN PARK WELL SITE | 6504 TWIN PARKS DRIVE |
| 1284-34-106-1 | 203-0310-001-0000 | WATT AVENUE WELL SITE | 7751 WATT AVE |
| 1284-34-94-1 | 209-0380-015-0000 | 7855 SUMMER PLACE DRIVE/ SUMMER PLACE WELL SITE | |
| 1284-31-1-1 | 023-294-053-0000 | PLACER COUNTY - PFE/BILLY MITCHELL WELL SITE | |
| 1284-34-140-1 | 203-0060-030-0000 | PRIOR WAY WELL SITE | |
| 1284-34-123-1 | 209-0450-007-0000 | 7304 DALY AVENUE/DALY AVENUE WELL SITE | |
| 1284-34-142-1 | 203-0950-050-0000 | 8443 TWIN OAKS TRAILS DRIVE/ TWIN OAKS DRIVE WELL SITE | |
| 1284-34-19-1 | 211-0464-011-0000 | 7108 GRENOLA WAY | |

CALIFORNIA
Real Estate Attachment
Page 4 of 14

SACRAMENTO/LINCOLN OAKS AND ROYAL OAKS
REAL PROPERTY LISTING  AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-121-1 | 229-0710-024-0000 | AUBURN WELL SITE |
| 1284-34-1-1 | 229-0374-011-0000 | GREENBACK LANE WELL SITE |
| 1284-34-4-2 | 232-0114-008-0000 | LINDA SUE WELL SITE NO. 2 |
| 1284-34-107-1 | 209-0410-050-0000 | 7406 MAR VISTA DRIVE |
| 1284-34-90-1 & 2 | 211-0570-039-0000 | 6389 NAVION/NAVION WELL SITE |
| 1284-34-127-1 | 203-0380-040-0000 | 7721 COMMONWEALTH DRIVE WELL SITE |
| 1284-34-103-1 | 209-0480-036-0000 | 8061 CORNERSTONE DRIVE |
| 1284-34-126-1 | 209-0610-081-0000 | 6842 WHYTE AVENUE WELL SITE |
| 1284-34-141-1 | 203-0850-001-0000 | PALMERSON WELL SITE |
| 1284-34-146-1 | 203-0060-086-0000 | FOX PARK WELL SITE |
| 1284-34-153-1 | 203-1270-059-0000 | 3438 ESTER BROOK WAY/ESTER BROOK WELL SITE |
| 1284-34-152-1 | 203-1490-080-0000 | NORTH LOOP WELL SITE |
| 1284-34-154-1 | 203-1420-003-0000 | DON JULIO WELL SITE |
| 1284-34-155-1 | 203-0050-048-0000 | ELVERTA TANK SITE / BEHIND KMART |
| 1284-34-158-1 | 203-1440-002-0000 | CALLEYSTONE WELL SITE |
| 1284-34-160-1 | 203-1400-082-0000 | ELVERTA /HIGHLAND HILLS WELL SITE |
| 1284-34-156-1 | 203-0110-092-0000 | EAGLE RIDGE WELL SITE |
| 1284-34-168-1 | 203-1650-105-0000 | FALCON VIEW WELL SITE NO. 2 / BRENTWOOD SUBDIVISION NO.4 |
| 1284-34-162-1 | 203-0070-132-0000 | COOK RIOLO / HIGHLAND HILLS TANK SITE |
| 1284-34-163-1 | 203-1530-024-0000 | 2808 MEADOW HAWK WAY WELL SITE |
| 1284-34-171-1 | 203-1700-109-0000 | 4234 ALBERTVILLE WAY/NORTHERN HILLS EAST WELL SITE |
| 1284-34-167-1 | 203-1640-046-0000 | 8233 FALCON VIEW DRIVE/FACLON VIEW DRIVE WELL NO. 1 |
| 1284-34-170-1 | 203-1690-076-0000 | PEPPERIDGE DRIVE WELL SITE |
| N/A | 209-0780-018 | ROSEVILLE ROAD TANK SITE - 8499 BUTTERNUT DRIVE |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CALIFORNIA
Real Estate Attachment
Page 5 of 14

SACRAMENTO/LINCOLN OAKS AND ROYAL OAKS
REAL PROPERTY AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-75-1 | 220-0141-021-0000 | HEMLOCK WELL SITE NO. 3 |
| 1284-34-74-1 | 220-0082-002-0000 | 5300 FORT SUTTER / FORT SUTTER WELL SITE |
| 1284-34-76-1 | 220-0061-003-0000 | SHENANDOAH WELL SITE |
| 1284-34-77-1 | 220-0214-012-0000 | RUSHMORE WELL SITE NO. 1 |
| 1284-34-80-1 | 222-0030-008-0000 | DIABLO DRIVE WELL SITE(SPRUCE) |
| 1284-34-79-1 | 222-0024-020-0000 | ROSEVILLE ROAD WELL SITE |
| 1284-34-81-1 | 222-0030-017-0000 | ANDREA BLVD. WELL SITE NO. 1 |
| 1284-34-95-1 | 222-0251-004-0000 | ANDREA BLVD. WELL SITE NO. 2 |
| 1284-34-101-1 | 219-0310-006-0000 | CHERBOURG WELL SITE |
| 1285-34-78-1 | 220-0255-011-0000 | JEANNE WELL SITE |
| 1285-34-78-1 | 220-0264-026-0000 | JEANNE WELL SITE |
| 1284-34-119-1 | 220-0671-029-0000 | 4908 BUFFWOOD |
| 1284-34-130-1 | 219-0410-010-0000 | CHARDONNAY WELL SITE NO. 5 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CWRC Engineering Dept.                    Updated on 10/11/99                    Printed on 10/17/99 at 10:08 AM

53

CALIFORNIA
Real Estate Attachment
Page 6 of 14

SACRAMENTO/SUBURBAN
REAL PROPERTY LIST AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-25-1 | 060-0043-019-0000 | SUTTERS GOLD-TANGO STREET WELL SITE |
| 1284-34-24-1 | 077-0071-001-0000 | WINCHESTER WELL SITE |
| 1284-34-28-1 | 060-0094-003-0000 | MONTEZUMA WELL SITE |
| 1284-34-27-1 | 077-0153-001-0000 | ROCKINGHAM WELL SITE |
| 1284-34-29-1 | 068-0111-013-0000 | EXPLORER WELL SITE NO. 1 |
| 1284-34-32-1 | 076-0165-007-0000 | MALAGA WELL SITE |
| 1284-34-116-1 | 077-0161-006-0000 | GOULD WELL SITE |
| 1284-34-34-1 | 074-0042-034-0000 | WILDROSE WELL SITE |
| 1284-34-33-1 | 068-0142-027-0000 | MARS WAY WELL SITE |
| 1284-34-35-1 | 075-0082-003-0000 | POINT REYES WELL SITE |
| 1284-34-37-1 | 060-0201-005-0000 | MOONBEAM WELL SITE |
| 1284-34-36-1 | 075-0074-004-0000 | WHITEWATER WELL SITE |
| 1284-34-117-1 | 077-0260-085-0000 | 3479 NUT PLAINS DRIVE / RAFTON CIRCLE-NUT PLAIN WELL SITE |
| 1284-34-26-1 | 077-0074-003-0000 | SWANSEA WELL SITE |
| 1284-34-41-1 | 075-0181-016-0000 | ROGUE RIVER WELL SITE |
| 1284-34-112-1 | 077-0233-029-0000 | 3128 CHETTENHAM / CHETTENHAM WELL SITE |
| 1284-34-43-1 | 060-0161-008-0000 | SOUTHPORT WELL SITE |
| 1284-34-42-1 | 074-0070-006-0000 | TALLYHO WELL SITE NO. 1 |
| 1284-34-44-1 | 078-0400-058-0000 | SALMON FALLS WELL SITE |
| 1284-34-85-1 | 074-0101-004-0000 | WESTPORTER WELL SITE |
| 1284-34-45-1 | 075-0351-033-0000 | FOLSOM BLVD. WELL SITE |
| 1284-34-23-1 | 078-0311-003-0000 | 8809 WOODMAN WAY / WOODMAN WAY WELL SITE |
| 1284-34-38-1 | 075-0112-004-0000 | WEST LA LOMA WELL SITE |
| 1284-34-86-1 | 075-0571-013-0000 | BUTTERFIELD WELL SITE |
| 1284-34-96-1 | 060-0351-002-0000 | 3608 FABERGE |
| 1284-34-47-1 | 075-0010-053-0000 | COLLEGE GREENS WELL SITE |
| 1284-34-97-1 | 068-0310-029-0000 | OAKEN BUCKET WELL SITE |
| 1284-34-89-1 | 068-0200-032-0000 | 9093 CALDERA / CALDERA WELL SITE |
| 1284-34-48-1 | 078-0390-013-0000 | BARRACUDA WELL SITE |
| 1284-34-46-1 | 075-0430-026-0000 | 9605 ALLEGHENY |
| 1284-34-87-1 | 075-0590-002-0000 | 9513 MIRA DEL RIO |
| 1284-34-100-1 | 075-0620-054-0000 | 2524 RIO BRAVO |

CWRC Engineering Dept.                    Updated on 10/11/99                    Printed on 10/17/99 at 10:14 AM

CALIFORNIA
Real Estate Attachment
Page 7 of 14

SACRAMENTO/SUBURBAN
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-102-1 | 060-0361-011-0000 | 3805 CONTEMPO |
| 1284-34-105-1 | 068-0444-004-0000 | 3216 EXPLORER / EXPLORER WELL SITE NO. 2 |
| 1284-34-109-1 | 068-0290-046-0000 | HUNTSMAN WELL SITE |
| 1284-34-111-1 | 068-0460-018-0000 | 9836 BURLINE |
| 1284-34-110-1 | 074-0220-034-0000 | 4121 ASHGROVE |
| 1284-34-118-1 | 068-0420-011-0000 | 9969 BEXLEY |
| 1284-34-124-1 | 077-0020-054-0000 | MILLS STATION WELL SITE |
| 1284-34-124-1 | 077-0020-055-0000 | MILLS STATION WELL SITE |
| 1284-34-124-1 | 077-0020-060-0000 | MILLS STATION WELL SITE |
| 1284-34-122-1 | 074-0280-034-0000 | 4414 TALLYHO DRIVE |
| 1284-34-114-1 | 077-0250-030-0000 | 10169 COUNTRYSIDE WAY       COUNTRYSIDE WAY WELL SITE |
| 1284-34-99-1 | 074-0212-003-0000 | 9148 CASTLEBAR |
| 1284-34-165-1 | 077-0370-105-0000 | ELLENWOOD COURT WELL SITE        MISTY MORNING CIRCLE |
| N/A | 076-0212-008-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 076-0212-011-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 076-0212-012-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 076-0212-013-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 076-0212-014-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 076-0212-015-0000 | SUBURBAN/PASEO DRIVE STORAGE TANK SITE |
| N/A | 063-0011-022-0000 | ROSEMONT STORAGE/WELL SITE |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

CWRC Engineering Dept.                    Updated on 10/11/99                    Printed on 10/17/99 at 10:14 AM

CALIFORNIA
Real Estate Attachment
Page 8 of 14

SANTA CRUZ / FELTON
REAL PROPERTY LISTING/AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DESCRIPTION AND ADDRESS |
|---|---|---|
| 1284-44-36-2 | 064-381-05 | BENNET NO. 2 CHOLRINATION STATION |
| 1284-44-33-2 | 064-381-16 | BULL CREEK SPRINGS |
| 1284-44-33-2 | 064-381-17 | BULL CREEK SPRINGS |
| 1284-44-33-2 | 064-381-20 | BULL CREEK SPRINGS |
| 1284-44-32-1 | 064-381-20 | BULL CREEK SPRINGS |
| 1284-44-34-2 | 065-013-34 | FALL CREEK PLANT |
| 1284-44-41-1 | 065-013-12 | BLAIR TANK SITE |
| 1284-44-27-3 | 064-021-04 | BENNETT SPRINGS |
| 1285-44-35-3 | 064-021-22 & 23 | BENNETT SPRINGS |
| 1284-44-34-1 | 064-083-05 | 600 SAN LORENZO/FELTON ARCES |
| 1284-44-31-3 | 071-031-03 | EL SOLYO - LOWER |
| 1284-44-28-1 | 064-201-33 | PINE DRIVE / TANK SITE |
| 1284-44-35-1 | 065-234-16 | TANGLEWOOD/MADRONA PUMP STATION |
| 1284-44-46-1 | 064-041-18 | MC CLOUD TANK SITE |
| 1284-44-33-1 | 064-011-02 | BULL CREEK WATER SHED |
| 1284-44-27-1 | 064-201-34 | BULL CREEK WATER SHED |
| 1284-44-27-2 | 064-201-35 | BULL CREEK WATER SHED |
| 1284-44-28-2 | 064-201-22 | BULL CREEK WATER SHED |
| 1284-44-31-1 & 2 | 064-011-01 | BULL CREEK WATER SHED |
| 1284-44-36-3 | 055-202-15 | SHINGLE MILL CREEK LOT |
| 1284-44-47-1 | 065-061-27 | FELTON WATER TREATMENT PLANT |
| N/A | 064-051-03 | HILLCREST DRIVE BOOSTER STATION |
|  | 064-031-28 | PORTION OF FEATHERSTON WAY |
|  | 064-031-23 | 10' X 150' PARCEL WITHIN 064-031-49 |
|  | 064-031-37 | PORTION OF LEY ROAD |
|  | 072-331-14 | OFF QUAIL HOLLOW ROAD |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

:WR ¯ ¯ gine¯ ¯¯ Dep'          Updated on 10/11/99          Printed on 10/17/99 at 10:15 AM

CALIFORNIA
Real Estate Attachment
Page 9 of 14

SACRAMENTO/GROVE
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-149-1 | 142-0096-002-0000 | GROVE WELL NO 2 / 1204 1ST AVENUE, WALNUT GROVE |
| 1284-34-148-1 | 142-0080-075-0000 | GROVE WELL NO 1 / 1ST AVENUE AND HANNUM COURT |
| 1284-34-166-1 | 142-0080-090-0000 | GROVE WELL NO 3 / ISLAND VIEW WAY |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CWRC Engineering Dept.                Updated on 10/11/99                Printed on 10/17/99 at 10:22 AM

CALIFORNIA
Real Property Attachmnent
Page 10 of 14

SACRAMENTO/ISLETON
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-83-1 | 157-0021-003-0000 | "B" STREET WELL/TREATMENT SITE |
| 1284-34-84-1 | 157-0040-001-0000 | "H" STREET WELL SITE |
| 1284-34-82-1 | 157-0026-003-0000 | ELEVATED STORAGE TANK/UNION STREET |
| N/A | 157-0066-003-0000 | 5TH STEET WELL/STORAGE/TREATMENT SITE |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CALIFORNIA
Real Estate Attachment
Page 11 of 14

SACRAMENTO/SUNRISE
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-128-1 | 072-0440-006-0000 | 11505 DOUGLAS BLVD. /        ADMIN. AREA BOOSTER PLANT |
| 1284-34-129-1 | 072-0440-011-0000 | STORAGE TANK - ADMINISTRATION AREA |
| 1284-34-131-1 | 072-0370-045-0000 | ALPHA AREA STORAGE TANK |
| 1284-34-132-1 | 072-0370-046-0000 | BETA AREA BOOSTER PLANT |
| 1284-34-133-1 | 072-0370-048-0000 | BETA AREA WELL "A" |
| 1284-34-134-1 | 072-0370-047-0000 | BETA AREA WELL "B" |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

CWRC Engineering Dept.

Updated on 10/11/99

Printed on 10/17/99 at 10:24 AM

SACRAMENTO/ARDEN AND ADMINISTRATION
REAL PROPERTY LISTING AND LOCATION CODE

CALIFORNIA
Real Estate Attachment
Page 12 of 14

| STATE BOARD OF EQUAL.NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-68-1 | 285-0072-011-0000 | WITTKOP WELL SITE |
| 1284-34-68-1 | 285-0072-012-0000 | WITTKOP WELL SITE |
| 1284-34-71-1 | 285-0201-010-0000 | FAIR LAKE WELL SITE NO. 2 |
| 1284-34-67-1 | 278-0201-011-0000 | 2305 WYDA WAY WELL SITE |
| 1284-34-104-1 | 294-0046-015-0000 | LARCH LANE WELL SITE |
| 1284-34-69-1 | 294-0130-006-0000 | FAIR OAKS AND FULTON AVENUE WELL SITE |
| 1284-34-70-1 | 285-0201-007-0000 | FAIR LAKE WELL SITE NO. 1 |
| 1284-34-92-1 | 285-0190-053-0000 | HURLEY AVENUE WELL SITE |
| 1284-34-151-1 | 238-0011-035-0000 | 4701 BELOIT DRIVE - SACRAMENTO OFFICE BUILDING |
| 1284-34-172-1 | 238-0011-036-0000 | PROPERTY NORTH SIDE OF 4701 BELOIT DRIVE OFFICE BUILDING |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

CALIFORNIA
Real Estate Property
Page 13 of 14

SACRAMENTO/PARKWAY
REAL PROPERTY LIST AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-50-1 | 050-0010-008-0000 | 55TH STREET WELL SITE |
| 1284-34-51-1 | 050-0164-011-0000 | LIPPI PARKWAY WELL SITE    4631 LIPPI PARKWAY |
| 1284-34-52-1 | 050-0031-020-0000 | "A" PARKWAY WELL SITE    4409 "A" PARKWAY |
| 1284-34-53-1 | 050-0010-012-0000 | SOUTHGATE WELL SITE - WEST    4150 FLORIN ROAD |
| 1284-34-53-2 | 050-0010-010-0000 | SOUTHGATE WELL SITE - EAST    4150 FLORIN ROAD |
| 1284-34-55-1 | 042-0123-007-0000 | 5029 SKY PARKWAY / SKY PARKWAY WELL SITE |
| 1284-34-56-1 | 043--134-011-0000 | STOCKER WELL STIE    7006 STOCKER WAY |
| 1284-34-58-1 | 043-0203-018-0000 | BRIGGS DRIVE WELL SITE    7111 BRIGGS DRIVE |
| 1284-34-64-1 | 042-0142-022-0000 | GOVERNORS CIRCLE WELL SITE    7100 GOVERNORS CIRCLE |
| 1284-34-57-1 | 051-0242-009-0000 | CONRAD WELL SITE    6808 CONRAD WAY |
| 1284-34-59-1 | 115-0430-018-0000 | WILBUR WAY WELL SITE |
| 1284-34-60-1 | 042-0011-001-0000 | FLORIN CENTER WELL SITE    4150 FLORIN ROAD (OFF 65TH) |
| 1284-34-62-1 | 115-0010-010-0000 | ELSIE AVENUE WELL SITE |
| 1284-34-65-1 | 051-0092-019-0000 | 7920 ROCKHURST WELL SITE |
| 1284-34-98-1 | 051-0394-010-0000 | 7821 GERBER ROAD/GERBER ROAD WELL SITE |
| 1284-34-91-1 | 050-0322-035-0000 | PERSIMMON AVENUE WELL SITE |
| 1284-34-63-1 | 040-0161-015-0000 | 65TH STREET EXPRESSWAY WELL SITE |
| 1284-34-61-1 | 051-0347-001-0000 | BLACKHAWK WELL SITE |
| 1284-34-125-1 | 115-0340-001-0000 | PARKSITE WATER TREATMENT PLANT |
| 1284-34-138-1 | 115-0130-012-0000 | COUNTRYSIDE WATER TREATMENT PLANT AND WELL SITE |
| 1284-34-135-1 | 115-0441-010-0000 | 8221 HEMINGWAY DRIVE WELL STIE |
| 1284-34-136-1 | 115-0031-036-0000 | WILBUR WAY WELL SITE NO. 2 |
| 1284-34-139-1 | 115-0130-013-0000 | COUNTRYSIDE WELL SITE NO.2 |
| 1284-34-161-1 | 115-0810-020-0000 | VINTAGE WATER TREATMENT PLANT AND WELL NO. 2 |
| 1284-34-161-1 | 115-0810-023-0000 | VINTAGE WATER TREATMENT PLANT AND WELL NO. 2 |
| 1284-34-161-1 | 115-0810-025-0000 | VINTAGE WATER TREATMENT PLANT AND WELL NO. 2 |
| 1284-34-161-1 | 115-0810-026-0000 | VINTAGE WATER TREATMENT PLANT AND WELL NO. 2 |
| 1284-34-161-1 | 115-0810-028-0000 | VINTAGE WATER TREATMENT PLANT AND WELL NO. 2 |
| 1284-34-157-1 | 115-1150-043-0000 | AUBBERY WELL SITE |
| 1284-34-144-1 | 115-0770-063-0000 | VINTAGE WELL SITE NO. 3 |

CWRC Engineering Dept.                Updated on 10/11/99                Printed on 10/17/99 at 10.28 AM

61

CALIFORNIA
Real Estate Attachment
Page 14 of 14

SACRAMENTO/PARKWAY
REAL PROPERTY LISTING AND LOCATION CODE

| STATE BOARD OF EQUAL. NO. | ASSESSOR PARCEL NO. | PROPERTY DISCRIPTION AND ADDRESS |
|---|---|---|
| 1284-34-147-1 | 115-0120-054-0000 | VINTAGE WELL SITE NO. 1 |
| 1284-34-159-1 | 115-1270-024-0000 | POWER INN ROAD WELL SITE |
| 1284-34-174-1 | 115-0130-059-0000 | 8299 EAST STOCKTON BLVD WELL SITE (ALL STATE INSURNANCE) |
| 1284-34-164-1 | 051-0010-072-0000 | FLORIN CREEK WATER TREATMENT PLANT SITE |
| 1284-34-173-1 | 115-0620-082-0000 | SUMMER SUNSET WELL SITE |
| 1284-34-169-1 | 050-0322-016-0000 | POMEGRANITE WATER STORAGE TANK SITE AND BOOSTER STATION |
| N/A | 115-0130-005-0000 | CALVINE ROAD WELL SITE |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

WR( gine Dept

Updated on 10/11/99

Printed on 10/17/99 at 10:28 AM

# EXHIBIT B



Notes:
Groundwater results in µg/L
Project Action Limits: 0.2 µg/L (PFOS) & 0.4 µg/L (PFOA)
☐ = Value Exceeds Action Limit
U = Non-detect at reporting limit shown
UJ = Estimated non-detect at the reporting limit shown
J = Estimated detect at concentration shown

^ Value obtained from field duplicate sample (higher concentration)

Groundwater Zones
☐ Perched                              ▓ B Zone
■ Water Table and B Zone     ▓ C Zone

**MATHR-FT011P-001-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 891 | 16.1 |

**MATHR-FT011P-007-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 623 | 73 U |

**MATHR-FT011P-002-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.329 | 0.127 |

**MATHR-MAFB-184**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 146 ^ | 16.8 ^ |

**MATHR-MAFB-39**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 1.79 | 3.86 |

**MATHR-FT011P-005-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 65.1 | 10.8 |

**MATHR-MAFB-189**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 7.65 | 14.2 |

**MATHR-MAFB-284**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0156 J | 0.0572 |

**MATHR-7-PZ-38P**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.25 | 0.0691 |

**MATHR-7-PZ-37P**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.132 | 0.38 J |

**MATHR-MAFB-41**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.125 | 0.549 |

**MATHR-MAFB-394**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0239 | 0.0687 |

**MATHR-7-PZ-39**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0227 | 0.0565 |

**MATHR-MAFB-373C**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.016 U | 0.032 U |

**MATHR-MAFB-372B**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0367 | 0.109 |

**MATHR-MAFB-448**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0209 ^ | 0.0699 |

**MATHR-MAFB-440P**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0632 | 0.306 |

**MATHR-MAFB-185**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 2.59 | 0.487 |

**MATHR-FT011P-003-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 619 | 19 |

**MATHR-FT011P-004-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 15.8 | 7.76 |

**MATHR-FT011P-006-GW**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 5.97 | 3.77 |

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.016 U | 0.0398 |

**MATHR-7-BV-08**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.866 | 0.855 |

**MATHR-7-BV-13**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0938 | 0.234 |

**MATHR-MAFB-283**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0419 | 0.0899 |

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0543 | 0.188 |

**MATHR-MAFB-396**

| | PFOS | PFOA |
|---|---|---|
| Groundwater (µg/L) | 0.0552 | 0.0683 |

FT011P

**SYMBOL KEY**

Groundwater Zones
⊕ Perched
⊕ Water Table and B Zone
⊕ B Zone
⊕ C Zone
→ Generalized B Unit Groundwater Flow Direction, Fourth Quarter 2014
☐ Capped Landfill
☐ Fire Training Area
☐ Installation Boundary

**Air Force Civil Engineer Center**
2261 Hughes Avenue
Building 171, Ste 155
JBSA Lackland, Texas 78236

**FIGURE 4-4**
**Groundwater Sampling Results**
Site Investigation Report
Former Fire Training Area FT011P
Former Mather Air Force Base, Sacramento County, California

| 0 | 100 | 200 | 400 | 600 |
|---|---|---|---|---|
| | | | | Meters |

| 0 | 600 | 1,200 | 1,800 | 2,400 |
|---|---|---|---|---|
| | | | | Feet |

NOTES:
Base map data obtained from
ESRI Online Services.

| 08/30/2016 | Rev: | Figure4-4-GWResults |
|---|---|---|
| Drawn: TJH | PROJ: 775290177 | |

# EXHIBIT C



www.elmontgomery.com
1550 East Prince Road
Tucson, AZ 85719
520.881.4912

# TECHNICAL MEMORANDUM

**DATE**: March 27, 2018      **PROJECT #**: 1316.03

**TO**: Bryan Meyers, The Boeing Company

**CC**: Peter Kvam, Aerojet Rocketdyne

**FROM**: Tim Leo, Colin Kikuchi

**PROJECT**: Inactive Rancho Cordova Test Site, Rancho Cordova, California

**SUBJECT**: Evaluation of EX-5 Operations on Perfluorinated Compound Groundwater Contamination, Inactive Rancho Cordova Test Site

## Introduction

On behalf of The Boeing Company (Boeing) and Aerojet Rocketdyne (Aerojet), Montgomery & Associates (M&A) prepared this technical memorandum to present the final results of an evaluation of the effect of EX-5 operations on the fate and transport of perfluorinated compound (PFC) contamination in groundwater at the Inactive Rancho Cordova Test Site (IRCTS). An initial draft memorandum was submitted to the Regional Water Quality Control Board (RWQCB) and Department of Toxic Substances Control (DTSC) on February 14, 2018. On the same day, the DTSC notified Boeing and Aerojet that they would review the memorandum but would not likely provide written comments. The RWQCB provided written comments on the initial draft on February 15, 2018. On March 15, 2018, a web meeting was held to review the study findings and discuss RWQCB comments. This final version of the technical memorandum incorporates responses to RWQCB comments.

## Background

An analysis of plume capture for the Mather Groundwater Extraction and Treatment (GET) system was conducted by M&A in 2017. Results of this analysis lead to a recommendation to the DTSC and RWQCB to cease operation of extraction well EX-5. EX-5 is located in the western portion of the Mather Main Base area and has operated since 2003 to control the leading edge of the perchlorate plume. **Figure 1** is a map of the study area that shows the location of EX-5. **Figure 2** summarizes the performance of EX-

TUCSON | PHOENIX | DENVER | SACRAMENTO | SALT LAKE CITY | LIMA | SANTIAGO



**MONTGOMERY**
& ASSOCIATES

5 since operations began, including trends in pumping rate and water quality.  The recommendation to cease operation considered the following conditions:

- Since early 2015, perchlorate concentration in EX-5 was less than the preliminary remedial action goal of 6 microgram per liter (µg/L) established in the remedial action plan for the Inactive Rancho Cordova Test Site (IRCTS) groundwater remedy.  In addition, in 2017 the perchlorate concentration in EX-5 was near or below the California Public Health Goal for perchlorate of 1 µg/L.  As a result, pumping of EX-5 delivers only small amounts of perchlorate mass to the Mather GET system.

- Continued pumping and treating relatively clean groundwater from EX-5 at the Mather GET system requires a substantial amount of electrical power, consumes treatment capacity that may be needed in the future to treat impacted groundwater from other more important remedy wells, and shortens treatment media life.

- EX-5 pumps groundwater impacted by PFCs to the Mather GET system[1].  The source of PFCs to the groundwater is related to historic operations at former Mather Air Force Base and is not related to historic Boeing or Aerojet operations.  More specifically, the source of PFCs detected in EX-5 is injection of PFC-impacted groundwater[2] into the aquifer zone screened by EX-5 (and other Mather extraction wells) by the Air Force.  **Figure 1** shows the location of the Air Force injection wells.  To date, treatment by the Air Force has been by air stripping, which does not remove the PFCs before injection.  Reportedly, the Air Force added treatment for the PFCs in early 2018[3].

- The Mather GET system removes most of the PFCs before discharge to Morrison Creek.  However, trace levels of PFCs are routinely discharged at concentrations routinely below 25 ng/L.

- Control and removal of PFCs from the groundwater is not the responsibility of Boeing or Aerojet.

---

[1] Extracted groundwater from EX-5 contains total PFCs at concentrations as high as about 350 nanograms per liter (ng/L).  This concentration is greater than the EPA Health Advisory Level (HAL) of 70 ng/L.  The HAL is not an enforceable standard.

[2] Injection began in 1999 and has continued to today at a total rate ranging from 1,000 to 1,500 gpm.  Four injection wells, designated in this memo as IW-501 through IW-504, are operated by the Air Force.

[3] The Air Force also indicated that they do not plan to further investigate the extent of PFC contamination in groundwater until an enforceable standard for PFCs is established by federal EPA or California EPA.  Investigation of PFC-impacted groundwater by the Air Force is not expected to commence for several years.

**Page 2**



The RWQCB requested that Boeing and Aerojet maintain operation of EX-5 until further analysis of the effects of ceasing operation of EX-5 on the fate and transport of PFCs in groundwater in the Main Base area was completed.  This request was based on a concern that cessation of EX-5 operation might eliminate the hydraulic control of PFC contamination from EX-5, which could result in impact to other nearby Mather extraction wells, particularly EX-9, and/or nearby public water supply wells.

In response to the request by the RWQCB to maintain EX-5 operations, Boeing requested that M&A conduct an analysis of the effect of EX-5 operations on the PFC contamination to support internal evaluation and planning, and then to facilitate additional engagement with the regulatory agencies and the Air Force on future responsibility for operation of EX-5.  Specifically, this analysis was conducted to:

- Evaluate the effect of ceasing operation of EX-5 on capture of PFC-impacted injection water, including the likelihood of other Mather extraction wells becoming impacted in the future;

- Identify other extraction wells and water supply wells that may already be impacted by the PFC contamination; and

- Develop a better conceptual understanding of the overall impact to groundwater quality from the historic injection of PFC-impacted water by the Air Force.

The methods and result of the analysis are provided below.

## Methods

The IRCTS groundwater model developed by M&A in 2016/2017 was used for this analysis.  The model was used to simulate the historic injection of PFC-impacted water (also referred to as effluent) by the Air Force using a particle tracking method.  Since 1998, the Air Force has injected effluent into the groundwater system (primarily Unit C) using four injection wells, IW-501, -502, -503, and -504.  The model was used to estimate the capture of injected effluent by nearby Mather remedial extraction wells and water supply wells owned by California American Water Company (Cal-Am).  The analysis included estimation of historical capture of Mather extraction well EX-5 from 2003 to 2017 and analysis of future capture under two predictive scenarios based on whether or not EX-5 continues to operate.  The model results were not compared in detail to observed groundwater conditions in the Main Base area.  Therefore, the results of this analysis are considered preliminary.  Evaluating model performance in the Main Base area and targeted re-calibration of the model, if appropriate, would improve confidence in the capture analysis.

**Page 3**



## Assumptions and Modifications to Groundwater Model

Both predictive scenarios assume that the Nut Plains well stopped operating at the beginning of 2016 (as reported by well owner)[4], and that effluent will be treated for PFCs before injection by the Air Force beginning in 2018.  Scenario 1 assumes that EX-5 continues operating.  Scenario 2 assumes that EX-5 stops operating at the beginning of 2018.

The groundwater flow model was modified to simulate the two predictive scenarios.  Specifically, three one-year long stress periods were added to the model to extend the historic simulation period through 2018.  Pumping rates for all wells other than Nut Plains and EX-5 were maintained at their modeled 2015 rates.  **Table 1** summarizes the model pumping rates for the period 1998 through 2018.

### TABLE 1. ANNUAL AVERAGE MODEL PUMPING RATES IN GALLONS PER MINUTE

| Well Owner | Boeing | | Air Force | | | | Cal-Am | | | | Golden State |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Well Name | EX-5 | EX-9 | IW-501 | IW-502 | IW-503 | IW-504 | Gould | NutPlains | Rockingham | Countryside | ACWS-18 |
| 1998 | 0 | 0 | 106 | 80 | 189 | 0 | 111 | 832 | 314 | 970 | 584 |
| 1999 | 0 | 0 | 265 | 108 | 290 | 0 | 111 | 832 | 452 | 1,167 | 390 |
| 2000 | 0 | 0 | 300 | 197 | 318 | 30 | 65 | 677 | 269 | 1,035 | 747 |
| 2001 | 0 | 0 | 264 | 269 | 218 | 167 | 65 | 675 | 268 | 1,033 | 891 |
| 2002 | 0 | 0 | 332 | 300 | 418 | 90 | 65 | 675 | 268 | 1,033 | 714 |
| 2003 | 307 | 0 | 429 | 360 | 615 | 131 | 20 | 519 | 222 | 1,095 | 644 |
| 2004 | 424 | 0 | 402 | 372 | 673 | 110 | 0 | 546 | 160 | 720 | 644 |
| 2005 | 383 | 0 | 374 | 385 | 732 | 89 | 68 | 767 | 150 | 579 | 644 |
| 2006 | 384 | 0 | 347 | 397 | 790 | 67 | 190 | 416 | 275 | 671 | 916 |
| 2007 | 366 | 0 | 320 | 410 | 848 | 46 | 190 | 416 | 275 | 671 | 916 |
| 2008 | 400 | 0 | 292 | 422 | 907 | 25 | 190 | 416 | 275 | 671 | 663 |
| 2009 | 435 | 367 | 292 | 422 | 907 | 25 | 190 | 416 | 275 | 671 | 592 |
| 2010 | 427 | 562 | 217 | 364 | 774 | 25 | 190 | 416 | 275 | 671 | 488 |
| 2011 | 435 | 602 | 233 | 371 | 744 | 23 | 190 | 416 | 275 | 671 | 488 |
| 2012 | 419 | 604 | 199 | 315 | 525 | 15 | 190 | 416 | 275 | 671 | 488 |
| 2013 | 435 | 630 | 259 | 281 | 360 | 28 | 190 | 416 | 275 | 671 | 488 |
| 2014 | 437 | 598 | 273 | 268 | 613 | 9 | 190 | 416 | 275 | 671 | 488 |
| 2015 | 432 | 622 | 279 | 263 | 706 | 7 | 190 | 416 | 275 | 671 | 488 |
| 2016 | 432 | 622 | 279 | 263 | 706 | 7 | 190 | 0 | 275 | 671 | 488 |
| 2017 | 432 | 622 | 279 | 263 | 706 | 7 | 190 | 0 | 275 | 671 | 488 |
| 2018 | 432 [1] | 622 | 279 | 263 | 706 | 7 | 190 | 0 | 275 | 671 | 488 |

[1] – For Scenario 2, pumping rate was zero from 2018 through 2024.

[4] Recent pumping data received after this modeling study from Cal-Am suggests that the NutPlains well resumed operation in fall 2017, possibly with wellhead treatment to remove the PFCs.

**Page 4**


**MONTGOMERY**
**& ASSOCIATES**

### Particle Tracking Simulations

Particle tracking simulations were conducted using mod-PATH3DU (Muffels and others, 2017) to evaluate both historical capture of injected effluent, and future capture under each of the two scenarios. To simulate a continuous source of PFCs to groundwater, particles were released annually at each injection well from the time that the well began operating (1998 for IW-501, -502, and -503, and 2000 for IW-504) through 2017. Ceasing particle release after 2017 simulates the treatment of PFCs by the Air Force beginning in 2018. Particles released through 2017 were tracked through 2024 to estimate the future migration of historic PFC-impacted groundwater. The screened interval for each injection well spans multiple model layers. Particle starting locations were defined based on the intersection of the well screen and each model layer.

A total of 200 particles were released annually for each well. For each injection well, the number of particles per model layer was defined based on the average simulated flow rates from the well into the aquifer. For IW-501, -502, and -503, most of the particles were initiated in model layer 5, representing the upper portion of Unit C. For IW-504, most of the particles were initiated in model layers 6 and 7, representing the middle to lower portion of Unit C. EX-5 is screened in model layers 5 through 7.

The simulations assume uniform effective porosity of 15%. Each particle was tracked through 2024 or until capture by a well.

## Results

### Simulated Particle Traces

**Figures 3 through 6** show simulated particle traces representing the extent of PFC-impacted water injected at IW-501, -502, -503, and -504 from 1998 to 2024. For Scenario 1, only particles that are captured by a well (either GET or water supply) are shown on the figures. The same particles shown for Scenario 1 are shown for Scenario 2, but in some cases the particles are not captured by a well reflecting the effect of shutting off EX-5. Particle traces for Scenario 1 (continued EX-5 pumping) are shown in red and particle traces from Scenario 2 (cessation of EX-5 pumping in 2018) are shown in green. In some cases, the traces are nearly perfectly coincident and therefore overlap each other on the figures. This reflects similar behavior of the particle traces (thereby the PFC contamination) under both scenarios. Simulated groundwater levels in model layer 5 (Hydrostratigraphic Unit C) for 2017 with EX-5 pumping are shown for reference. Pronounced groundwater mounding is evident around the Air Force injection wells, and is centered at IW-503. This is due to the high injection rates at IW-503 relative to the other

**Page 5**



**MONTGOMERY**
**& ASSOCIATES**

injection wells.  The groundwater mound causes injected effluent to flow away from the injection wells, as shown by the particle traces.

Differences between the red (Scenario 1) and green (Scenario 2) particle traces in **Figures 3 through 6** illustrate the effect of ceasing EX-5 operation on the migration of particles (thereby the movement of PFC contamination).  **Figure 3** indicates that injected effluent in IW-501 did not flow toward EX-5 in Unit C and the projected future transport of PFC-impacted groundwater would not be affected by the operational status of EX-5.  **Figure 3** also suggests that some of the effluent injected at IW-501 may have flowed to the northwest toward Cal-Am's Gould and Countryside wells, and would flow toward Golden State Water Company's (GSWC) ACWS-18 well if EX-5 were shut off.

In contrast to IW-501, particles released at IW-502 (**Figure 4**), IW-503 (**Figure 5**), and IW-504 (**Figure 6**) are captured by Mather GET extraction wells and more particles are captured by Cal-Am wells by 2024, and the impact of ceasing operation of EX-5 is readily discernable in the differences between the particle traces.  Under Scenario 2, some of the particles released at IW-502 (**Figure 4**) that were captured by EX-5 under Scenario 1 continue moving northeast, and either are captured by EX-9 or remain active moving toward Cal-Am supply wells.  Similarly, particles released at IW-503 (**Figure 5**) that were captured by EX-5 under Scenario 1 largely remain active under Scenario 2, moving either toward Cal-Am supply wells to the northeast, or toward the southwest.  The operational status of EX-5 is projected to have only a minor effect on PFC mass that migrates to the southwest from the injection wells.  Finally, **Figure 6** shows that particles released at IW-504 (the deepest injection well) are largely capture by EX-5 when operating, but are projected to continue moving to the northeast with EX-5 off.  Overall, results of the particle tracking simulations suggest the following:

- EX-5 does exert some hydraulic control of PFC-impacted groundwater.

- EX-9 may be impacted or would be threatened to become impacted by PFC contamination of EX-5 was shut off.

- The Cal-Am Nutplains, Gould, Countryside, and Rockingham wells may be impacted or would be threatened to become impacted whether EX-5 continues to operate or is shut off.

- The potential for impacts from the PFC contamination at the GSWC ACWS-18 well would increase if EX-5 were shut off.

**Page 6**


**MONTGOMERY**
**& ASSOCIATES**

### Projected Extent of PFC-impacted Groundwater

**Figure 7** shows the projected extent of PFC-impacted groundwater in Unit C. The extent of PFC-impacted groundwater is delineated by the end points of particle traces in Unit C at the end of 2024. PFC-impacted groundwater in Unit C may extend as far as one mile from the injection wells.

Areas where particle end points do not exist represent areas where particles were projected by the model to move upward or downward out of Unit C[5]. However, it is likely that PFC-impacted groundwater exists in these areas. Conceptually, it is reasonable to expect that the groundwater mound created by the injection wells (shown by the concentric subcircular groundwater elevation contours around the injection wells) resulted in radial flow of PFC-impacted groundwater away from the injection wells. The result of this flow pattern would be expected to create a relatively uniform zone of PFC-impacted groundwater in Unit C. The outline shown on **Figure 7** generally approximates this expected zone of PFC-impacted groundwater in Unit C.

### Limitation of Study

The model projections are considered preliminary. Additional modifications to the model and possible re-calibration would likely be required to improve confidence in the model projections.

## Conclusions

Key findings of this investigation include the following:

- Particle tracking simulations show that EX-5 and EX-9 historically captured some of the particles released at the injection well screens. This indicates that groundwater conditions in this area support the migration of PFC-impacted effluent toward EX-5 and EX-9. This finding corroborates water quality data indicating the presence of PFCs in water pumped by EX-5.

- The threat of impact from PFC contamination to Cal-Am wells near the Main Base area (and possibly GSWC well ACWS-18) is projected to increase if EX-5 is shut off.

---

[5] Further interrogation of the model would be required to evaluate the representativeness of this upward and downward particle movement. Further, model revisions may be required to improve the representativeness of projected upward and downward movement of PFC-impacted groundwater.

**Page 7**



As a result of these conclusions, Boeing sampled EX-9 for PFCs on January 30, 2018. Laboratory results for this sample indicate the well is impacted by total PFCs (reported as total PFOAs and PFOS) of 2.3 ng/L. The well will be resampled during the next PFC sampling event to confirm this result.

## Recommendations

Based on results of the analysis, the following actions are recommended:

- Continue operating EX-5 until a resolution is reached between the regulatory agencies and the Air Force on future responsibility for well operations. To date, Boeing and Aerojet have expended over $50,000 evaluating and monitoring the impacts of PFC contamination on the Mather GET remedy.

- Continue evaluating the future need to operate EX-5 for perchlorate plume control. Perchlorate concentrations are near the PHG for perchlorate and if they remain stable at this concentration, Boeing and Aerojet may request to cease operation of the well because the mass removal rate (less than 2 pounds per year) is low, electrical power costs are high (about $36,000 per year), the 450 gpm of flow from EX-5 consumes over 10% of the treatment system capacity, and loading of naturally occurring constituents from the flow from EX-5 reduces the runtime of the treatment media. After shutdown, Boeing and Aerojet would continue to monitor water quality in EX-5 and surrounding monitor wells and would restart the well if operation was required to control perchlorate plume migration.

- RWQCB request that the Air Force sample their effluent for perchlorate and provide any existing perchlorate concentration data for their injected water. These data will help determine whether the current perchlorate concentrations at EX-5 are related to injection of perchlorate-impacted water by the Air Force.

- The RWQCB (and DTSC if needed) meet with the Air Force to review the analysis results and develop a plan for future operation of EX-5. While Boeing and Aerojet will cooperate with stakeholders on the PFC/EX-5 issue, it prefers that the regulatory agencies work directly with the Air Force to develop a plan to equitably share responsibility for operation of EX-5.

- RWQCB contact Cal-Am and GSWC to determine if they have sampled their wells in the Main Base area for PFCs. If they have, request the sample results.

- Begin holding semi-annual meetings to keep stakeholders informed on the status of PFC groundwater contamination in the project area. Boeing will begin coordinating with stakeholders to schedule a meeting before the end of June 2018.

**Page 8**



- If deemed necessary to support further engagement with stakeholders on the PFC contamination issue, improve the groundwater model to improve confidence in the model projections.  Model improvements could include further evaluation of existing data, acquisition of new data from stakeholders, and local recalibration in the Main Base area.

## References

Muffels, C., Wang, X., Tonkin, M., Neville, C., Ramadhan, M., and Craig, J.R., 2017, User's Guide for mod-PATH3DU: A groundwater path and travel-time simulator, S.S. Papadopulos & Associates, Inc., and University of Waterloo, Bethesda, Maryland, and Waterloo, Ontario.



THE BOEING COMPANY
**INACTIVE RANCHO CORDOVA TEST SITE**
RANCHO CORDOVA, CALIFORNIA

**LOCATION MAP**

**MONTGOMERY** & ASSOCIATES
Water Resource Consultants
2018
FIGURE 1

GIS-Tuc\Projects\1316\1316.03\Mather2017_Inv\MBSIW_EX5_Evaluation\REPORT_FIGURES\Fig01_LocationMap\29Jan2018



**EXPLANATION**

ft msl = Feet above mean sea level
gpm/ft = Gallons per minute per foot
µg/L = Micrograms per liter
HSU = Hydrostratigraphic unit; screened HSU labeled below screened intervals on well schematic
PRAG = Proposed Remedial Action Goal defined in 2007 Remedial Action Plan
PHG = California Public Health Goal
Non-detects are represented with an open symbol at the method reporting limit.

# FIGURE 2. EX-5 PERFORMANCE

MONTGOMERY & ASSOCIATES





EXPLANATION

▲ Air Force Injection Well

⊘ Boeing Extraction Well

⚲ Supply Well

Model Grid

Major Road

Minor Road

—40— Simulated Head in Model Layer 5, 2017

Trace of particle captured by Boeing Extraction Wells or Cal-Am supply wells, scenario 1

Trace of particle, scenario 2

THE BOEING COMPANY
**INACTIVE RANCHO CORDOVA TEST SITE**
RANCHO CORDOVA, CALIFORNIA

**IW-501
PARTICLE TRACKING
THROUGH 2024**

MONTGOMERY
& ASSOCIATES
Water Resource Consultants

2018

FIGURE 3

GIS-Tuci\Projects\1316\1316.03\Mather\2017_InvMBS\W_EXS_Evaluation\REPORT_FIGURES\IW501_ptl_compare_scenarios\24Jan2018







THE BOEING COMPANY
**INACTIVE RANCHO CORDOVA TEST SITE**
RANCHO CORDOVA, CALIFORNIA

## IW-502 PARTICLE TRACKING THROUGH 2024

MONTGOMERY & ASSOCIATES
Water Resource Consultants
2018
FIGURE 4

GIS-Tuc\Projects\1316\1316.03\Mather2017_Inv\MBSIW_EX5_Evaluation\REPORT_FIGURES\IW502_ptl_compare_scenarios\24Jan2018

2,195,000
2,197,500
2,200,000
2,202,500
330,000
327,500
325,000
Countryside
Gould
Rockingham
ACWS-18
EX-9
EX-5
Nut Plains
MBS IW-504
MBS IW-503
MBS IW-502
MBS IW-501
MATHER FIELD RD
ROCKINGHAM DR
INTERNATIONAL DR
OLD PLACERVILLE RD
ROUTIER RD
LINCOLN VILLAGE DR
HAPPY LN
MATHER FIELD
50
EXPLANATION
Air Force Injection Well
Boeing Extraction Well
Supply Well
Model Grid
Major Road
Minor Road
-40 Simulated Head in Model Layer 5, 2017
Trace of particle captured by Boeing Extraction Wells or Cal-Am supply wells, scenario 1
Trace of particle, scenario 2
N
0 400 800 1,200
Feet
THE BOEING COMPANY
INACTIVE RANCHO CORDOVA TEST SITE
RANCHO CORDOVA, CALIFORNIA
IW-503
PARTICLE TRACKING
THROUGH 2024
MONTGOMERY & ASSOCIATES
Water Resource Consultants
2018
FIGURE 5
GIS-Tuc\Projects\1316\1316.03\Mather2017_Inv\MBSIW_EX5_Evaluation\REPORT_FIGURES\IW503_ptl_EX5on\09Jan2018

## EXPLANATION

▲   Air Force Injection Well

✿   Boeing Extraction Well

✿   Supply Well

      Model Grid

———   Major Road

———   Minor Road

- -40- -   Simulated Head in Model Layer 5, 2017

      Trace of particle captured by Boeing
      Extraction Wells or Cal-Am supply
      wells, scenario 1

      Trace of particle, scenario 2

0   400   800   1,200
Feet

THE BOEING COMPANY
**INACTIVE RANCHO CORDOVA TEST SITE**
RANCHO CORDOVA, CALIFORNIA

**IW-504
PARTICLE TRACKING
THROUGH 2024**

MONTGOMERY
& ASSOCIATES
Water Resource Consultants

2018

FIGURE 6

GIS-Tucl/Projects\1316\1316.03\Mather2017_Inv\MBSIW_EX5_Evaluation\REPORT_FIGURES\IW504_ptl_compare_scenarios\24Jan2018



EXPLANATION

▲ Air Force Injection Well

⚲ Boeing Extraction Well

⚲ Supply Well

Model Grid

—— Major Road

—— Minor Road

—-40— Simulated Head in Model Layer 5, 2017

• Endpoint in Unit C, Scenario 1

• Endpoint in Unit C, Scenario 2

▪▪▪▪ Approximate extent of impacted groundwater in Unit C

THE BOEING COMPANY
**INACTIVE RANCHO CORDOVA TEST SITE**
RANCHO CORDOVA, CALIFORNIA

**APPROXIMATE EXTENT
OF IMPACTED
GROUNDWATER, UNIT C**

MONTGOMERY
& ASSOCIATES
Water Resource Consultants

2018

FIGURE 7

GIS-TuciProjects\1316\1316.03\Mather2017_InvMBSIW_EX5_Evaluation\REPORT_FIGURES\All_IW_ept_UnitC\23Mar2018

# EXHIBIT D





EDMUND G. BROWN JR.
GOVERNOR

MATTHEW RODRIGUEZ
SECRETARY FOR
ENVIRONMENTAL PROTECTION

**Central Valley Regional Water Quality Control Board**

23 May 2018

Mr. Doug Self
BRAC Environmental Coordinator
AFRPA Western Region Execution Center
3411 Olson Street
McClellan, CA 95652-1003

### REQUEST FOR AIR FORCE ASSISTANCE WITH PER- AND POLYFLUOROALKYL SUBSTANCES RELEASED AT THE FORMER MATHER AIR FORCE BASE

Central Valley Regional Water Quality Control Board staff (Central Valley Water Board staff) is requesting your support in addressing the Per- and Polyfluoroalkyl Substances (PFAs) that were discharged during historical activities on the former Mather Air Force Base (base). Recent investigations conducted by the Air Force have shown these activities impacted groundwater in several areas beneath the former base and have spread to off-site areas to the north and west. At least one supply well, the California American Water's (Cal Am) Nut Plains Well, located north of the former base has been impacted with concentrations well above the EPA Health Advisory for perfluorooctanesulfonic acid (PFOS) and perfluorooctanoic acid (PFOA) of 70 parts per trillion (ppt) and other supply wells are threatened. Your assistance is required to track the movement of these contaminants and take actions (as warranted) to provide impacted well owners with clean drinking water and protect threatened drinking water supply wells near the former base.

We request that the Air Force begin long-term monitoring of the plumes associated with the former fire training area (FT011) and the plume(s) created by multiple sources within the Main Base/Strategic Air Command Area (MB/SAC Area). We believe this action is warranted and is clearly supported by the Air Force's 2012 Guidance (*Interim Air Force Guidance on Sampling and Response Actions for Perfluorinated Compounds at Active and BRAC Installations*, August 2012). This guidance states "Based on the evaluation of risk and potential human exposure (e.g. drinking water is affected) or if there is off-site migration, it may be necessary to initiate interim response actions. …Interim response to reduce risk may include plume migration control, provision of drinking water, land use controls, or monitoring until appropriate risk-based values are identified." We believe the criteria to implement these response actions has been met.

KARL E. LONGLEY ScD, P.E., CHAIR | PAMELA C. CREEDON P.E., BCEE, EXECUTIVE OFFICER

11020 Sun Center Drive #200, Rancho Cordova, CA 95670 | www.waterboards.ca.gov/centralvalley

♻ RECYCLED PAPER

Mr. Doug Self                        - 2 -                        23 May 2018

We recognize that the Air Force has already taken several interim response actions, including installation and operation of granular activated carbon treatment on the Site 7 and MB/SAC treatment plants. These interim measures were implemented to remove PFOS and PFOA prior to injection into the water-bearing zones beneath the former base and we thank the Air Force for these proactive actions. However, additional measures are needed to protect water quality and human health.

Based on the available groundwater data collected by the Air Force, which was presented and discussed at recent Base Realignment and Closure (BRAC) Cleanup Team meetings, we have concluded that the Cal Am well located on Nut Plains Drive (Nut Plains Well) has been impacted by PFAS originating from the base. The Nut Plains Well is a key component of Cal Am's drinking water supply system near the former base and they installed a GAC unit on this well in August 2017 to remove PFOS and PFOA. We request that the Air Force provide fair compensation for the installation and long-term operating costs associated with the new Nut Plains treatment system.

Central Valley Water Board staff will be contacting you, Cal AM, and other stakeholders in June 2018 to schedule a meeting in 3Q18 to discuss the actions requested in this letter and a schedule for their implementation. In addition to the actions requested above, the meeting should be used to discuss the future use (if any) of extraction well EX-5. Boeing no longer needs to operate this well to contain their perchlorate plume. Based on recent modeling efforts (*Technical Memorandum: Evaluation of EX-5 Operations on Perfluorinated Compound Groundwater Contamination, Inactive Rancho Cordova Test Site*, Montgomery & Associates, March 2018), this well has inadvertently provided some hydraulic control of PFAs discharged through the Air Force's injection wells MB IW-501 through -504. If this well is shutdown, the existing plume of PFAs may migrate to several nearby supply wells in addition to the Nut Plains Well.

We look forward to working with you and other stakeholder to reduce the impact and threat posed by PFAS around the former Mather Air Force Base.

*Stewart W. Black*

Stewart W. Black, P.G.
Site Cleanup Program Manager
Central Valley Regional Water Quality Control Board

cc:   Mr. John Lucey, USEPA, San Francisco (via email)
      Mr. Franklin Mark, DTSC, Sacramento (via email)
      Mr. Rick Balazs, County of Sacramento EDD (via email)
      Mr. S. Audie Foster, Cal Am (via email)
      Ms. Victoria Kunda, Cal Am (via email)
      Mr. Phil Mook, AFCEC (via email)

# EXHIBIT E

| TABLE 1 | |
|---|---|
| **Nut Plains Well GAC Treatment System**<br>**Total Cost Breakdown** | |
| **Item** | **Cost (US $)** |
| Labor | $18,585.06 |
| Overhead | $90,795.04 |
| Engineering | $170,080.86 |
| General/Special Inspections | $9,588.05 |
| Construction Labor & Equipment | $342,770.96 |
| Construction Materials | $661,079.15 |
| **TOTAL** | **$1,292,899.12** |

| TABLE 2 | |
|---|---|
| **Project Actual Costs from SAP** | |
| **Cost Element Description** | **Cost (US $)** |
| 401k Expense | $620.03 |
| Capital Accrual Clearing | $0.00 |
| Contract Svc-Eng - Natural Account | 179,668.91 |
| Contract Svc-Other - Natural Account | $342,770.96 |
| Defined Compensation Plan Expense | $949.34 |
| FICA | $1,403.32 |
| FUTA | $9.33 |
| Group Insurance Expense | $1,473.57 |
| Indirect Overhead Clearing | $81,305.83 |
| Labor Expense Accrual | $0.00 |
| Labor Natural Account | $18,585.06 |
| M & S - Natural Account | $656,079.15 |
| Misc Maint Paving/Backfill | $5,000.00 |
| PBOP Capitalized Credits | $-35.95 |
| SCE-Annual Incentive Plan | $1,335.76 |
| SCE-Insurance Workers Comp | $374.37 |
| SCE-PBOP Expense | $261.78 |
| SCE-Pension Expense | $1,336.95 |
| SCE-Transportation Oper - A&G | $1,684.78 |
| SUTA | $75.93 |
| **TOTAL** | **$1,292,899.12** |

0.0/
- /2-8-19/vc/vc

| TABLE 3 | | | | |
| --- | --- | --- | --- | --- |
| **Contractor Costs for Nut Plains Well GAC Treatment System** | | | | |
| **Invoice Date** | **Invoice #** | **Contractor** | **Services Description** | **Invoice Amount** |
| 9/21/2017 | 7406 | Peterson Brustad Engineering Consulting | Nut Plains Storm Drain Sewer Design | $4,591.85 |
| 10/16/2017 | 7466 | Peterson Brustad Engineering Consulting | Nut Plains Storm Drain Sewer Design | $1,876.88 |
| 11/16/2017 | 7531 | Peterson Brustad Engineering Consulting | Nut Plains Storm Drain Sewer Design | $1,168.13 |
| 12/18/2017 | 7592 | Peterson Brustad Engineering Consulting | Nut Plains Storm Drain Sewer Design | $1,722.00 |
| 7/15/2017 | 226989 | ENGEO | Nut Plains Treatment - Special Inspection | $1,522.00 |
| 7/14/2017 | 227676 | ENGEO | Nut Plains Treatment - Special Inspection | $5,295.30 |
| 8/11/2017 | 228230 | ENGEO | Nut Plains Treatment - Special Inspection | $1,702.00 |
| 9/8/2017 | 228896 | ENGEO | Nut Plains Well Treatment | $1,068.75 |
| 5/18/2017 | 16031 | Auburn Constructors | Engineering services, labor and equipment, materials, paving | $93,448.20 |
| 5/23/2017 | 16032 | Auburn Constructors | Engineering services, labor and equipment, materials, paving | $77,804.02 |
| 6/29/2017 | 16033 | Auburn Constructors | Labor and equipment, materials, paving, engineering | $501,794.83 |
| 7/18/2017 | 16034 | Auburn Constructors | Labor and equipment, materials, paving, engineering | $167,488.94 |
| 8/17/2017 | 16035 | Auburn Constructors | Labor and equipment, materials, paving, engineering | $169,050.69 |
| 9/1/2017 | 16036 | Auburn Constructors | Labor and equipment, materials, paving, engineering | $112,902.34 |
| 9/3/2017 | 16037 | Auburn Constructors, | Labor and equipment, materials, paving, engineering | $78.98 |
| 11/7/2017 | 16038 | Auburn Constructors | Labor and equipment, materials, paving, engineering | $4,026.11 |
| 1/16/2018 | 201702 | Auburn Constructors | Nut Plains- Pump-to-Waste Pipe | $3,410.00 |
| **TOTAL\*** | | | | **$1,148,951.02** |
| \* The remaining difference between the total costs and the contractor costs are Cal Am overhead costs incurred solely in connection with the Nut Plains Well GAC treatment system. | | | | |

# EXHIBIT F

# Invoice

| | |
|---|---|
| **Invoice Number** | 16031 |
| **Invoice Date** | May 18, 2017 |
| **Supply Date** | Mar 31, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000075940 |
| **Payment Terms** | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Engineering Services | AU | 0.705 | $131,154.00 | $92,463.57 |
| 2 | 20 | Labor and Equipment | AU | 0.001 | $333,744.85 | $333.74 |
| 3 | 30 | Materials | AU | 0.001 | $645,894.15 | $645.89 |
| 4 | 40 | Paving | AU | 0.001 | $5,000.00 | $5.00 |

| | |
|---|---|
| **Subtotal** | $93,448.20 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $93,448.20 |

Powered by **taulia**

*Handwritten notes:*

| Item # | SES | POC |
|---|---|---|
| 10 | 1000471545 | 5000691474 |
| 20 | 1000471547 | 5000691475 |
| 30 | 1000471549 | 5000691476 |
| 40 | 1000471550 | 5000691477 |

No retention held for this invoice; invoice was outstanding for ~ 2 months
T. Hasler
5/22/17

# Invoice

| | |
|---|---|
| Invoice Number | 16032 |
| Invoice Date | May 23, 2017 |
| Supply Date | May 23, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000075940 |
| Payment Terms | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---------|-------------|------|-----|-----------|-----------|
| 1 | 10 | Engineering Services | AU | 0.131 | $131,154.00 | $17,181.17 |
| 2 | 20 | Labor and Equipment | AU | 0.021 | $333,744.85 | $7,008.64 |
| 3 | 30 | Materials | AU | 0.083 | $645,894.15 | $53,609.21 |
| 4 | 40 | Paving | AU | 0.001 | $5,000.00 | $5.00 |

| | |
|---|---|
| Subtotal | $77,804.02 |
| Total Tax Amount | $0.00 |
| Invoice Amount | $77,804.02 |

Powered by
**taulia**

*(handwritten annotations)*

SES                    POC

10   1000472223    5000692704

20   1000472224    5000692705

30   1000472225    5000692706

40   1000472226    5000692707

90

# Invoice

| | |
|---|---|
| Invoice Number | 16033 |
| Invoice Date | Jun 29, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000075940 |
| Payment Terms | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 0.502 | $333,744.85 | $167,539.91 |
| 2 | 30 | Materials | AU | 0.517 | $645,894.15 | $333,927.28 |
| 3 | 40 | Paving | AU | 0.001 | $5,000.00 | $5.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 0.015 | $21,509.26 | $322.64 |

| | |
|---|---|
| **Subtotal** | $501,794.83 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $501,794.83 |

Powered by


# Invoice

| | |
|---|---|
| **Invoice Number** | 16034 |
| **Invoice Date** | Jul 18, 2017 |
| **Supply Date** | Jul 18, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000075940 |
| **Payment Terms** | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 0.316 | $333,744.85 | $105,463.37 |
| 2 | 30 | Materials | AU | 0.085 | $645,894.15 | $54,901.00 |
| 3 | 40 | Paving | AU | 0.001 | $5,000.00 | $5.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 0.331 | $21,509.26 | $7,119.57 |

| | |
|---|---|
| **Subtotal** | $167,488.94 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $167,488.94 |

Powered by


# Invoice

| | |
|---|---|
| Invoice Number | 16035 |
| Invoice Date | Aug 17, 2017 |
| Supply Date | Aug 17, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000075940 |
| Payment Terms | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 0.06 | $333,744.85 | $20,024.69 |
| 2 | 30 | Materials | AU | 0.216 | $652,669.15 | $140,976.54 |
| 3 | 40 | Paving | AU | 0.001 | $5,000.00 | $5.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 0.374 | $21,509.26 | $8,044.46 |

| | |
|---|---|
| Subtotal | $169,050.69 |
| Total Tax Amount | $0.00 |
| Invoice Amount | $169,050.69 |


Powered by taulia

# Invoice

| | |
|---|---|
| Invoice Number | 16036 |
| Invoice Date | Sep 1, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000075940 |
| Payment Terms | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 0.1 | $333,744.85 | $33,374.49 |
| 2 | 30 | Materials | AU | 0.105 | $652,669.15 | $68,530.26 |
| 3 | 40 | Paving | AU | 0.995 | $5,000.00 | $4,975.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 0.28 | $21,509.26 | $6,022.59 |

| | |
|---|---|
| **Subtotal** | $112,902.34 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $112,902.34 |

Powered by



# Invoice

| | |
|---|---|
| **Invoice Number** | 16037 |
| **Invoice Date** | Sep 3, 2017 |
| **Supply Date** | Sep 3, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000075940 |
| **Payment Terms** | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 1 | $0.01 | $0.01 |
| 2 | 30 | Materials | AU | 1 | $78.97 | $78.97 |
| 3 | 40 | Paving | AU | 1 | $0.0001 | $0.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 1 | $0.001 | $0.00 |

| | |
|---|---|
| **Subtotal** | $78.98 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $78.98 |

Powered by


# Invoice

| | |
|---|---|
| Invoice Number | 16038 |
| Invoice Date | Nov 7, 2017 |
| Supply Date | Nov 7, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000075940 |
| Payment Terms | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Labor and Equipment | AU | 1 | $0.0001 | $0.00 |
| 2 | 30 | Materials | AU | 1 | $4,026.11 | $4,026.11 |
| 3 | 40 | Paving | AU | 1 | $0.0001 | $0.00 |
| 4 | 50 | Engineering- Remaining Services | AU | 1 | $0.0001 | $0.00 |

SES: 1000538512, DOC: 5000789108

| | |
|---|---|
| Subtotal | $4,026.11 |
| Total Tax Amount | $0.00 |
| Invoice Amount | $4,026.11 |

Powered by


# Invoice

| | |
|---|---|
| **Invoice Number** | 201702 |
| **Invoice Date** | Jan 16, 2018 |
| **Supply Date** | Jan 16, 2018 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000092695 |
| **Payment Terms** | 30 days net |

**Supplier**
AUBURN CONSTRUCTORS INC
730 W Stadium Ln
Sacramento, CA 95834-1130
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Nut Plains- Pump-to-Waste Pipe | AU | 1 | $3,410.00 | $3,410.00 |

| | |
|---|---|
| **Subtotal** | $3,410.00 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $3,410.00 |

SES: 1000559660, DOC: 5000817449

Powered by


# Invoice

| | |
|---|---|
| **Invoice Number** | 226989 |
| **Invoice Date** | Jun 15, 2017 |
| **Supply Date** | Jun 15, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000053164 |
| **Payment Terms** | 45 days net |

**Supplier**
Engeo Inc
2010 Crow Canyon Place
Ste 250
San Ramon, CA 94583
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Nut Plains Treatment- Special Inspection | AU | 1 | $1,522.00 | $1,522.00 |

| | |
|---|---|
| **Subtotal** | $1,522.00 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $1,522.00 |

Powered by



| Invoice |
| --- |



**GEO**
*~~Expect Excellence~~*

2010 Crow Canyon Place, Suite 250
San Ramon, CA  94583
Phone (925) 866-9000
Fax (888) 279-2698

Mr. Tim Hasler
California American Water Company
tim.hasler@amwater.com
P.O. Box 5623
Cherry Hill, NJ  08034

June 16, 2017
Invoice No:          226989

Project Manager:     Travis Chatters
Project Assistant:   Stacey Lacy

Project          14061.000.000          Nut Plains Well Treatment

**Professional Services through June 11, 2017**

Phase          001          Special Inspections
Client Contract S1714; PO # 5000053164; Line 20 dated 06/08/17, fully executed 06/09/17

**Professional Personnel**

|  | Hours | Rate | Amount |  |
| --- | --- | --- | --- | --- |
| Associate Engineer | 1.00 | 230.00 | 230.00 |  |
| Staff Engineer | 2.50 | 165.00 | 412.50 |  |
| Field Representative | 2.50 | 118.00 | 295.00 |  |
| Project Assistant | 2.00 | 115.00 | 230.00 |  |
| Totals | 8.00 |  | 1,167.50 |  |
| **Total Labor** |  |  |  | **1,167.50** |

**Unit Billing**

|  |  |  |  |  |
| --- | --- | --- | --- | --- |
| Compaction ASTM 1557 (A-C) |  | 1.0 Test @ 320.00 | 320.00 |  |
| Field Equipment, Vehicle & Wireless Comm |  | 1.5 Hours @ 23.00 | 34.50 |  |
| **Total Units** |  |  | 354.50 | 354.50 |

**Contract Summary**

|  | Current | Previous | To Date |
| --- | --- | --- | --- |
| Total Billings | 1,522.00 | 0.00 | 1,522.00 |
| Contract Amount |  |  | 11,096.00 |
| Contract Remaining |  |  | 9,574.00 |

|  |  |
| --- | --- |
| **Subtotal this Phase** | **$1,522.00** |
| **Total this Invoice** | **$1,522.00** |

*"Submit via Trulia"*

All invoices are due upon receipt. A late charge of 1.5% per month may be added to any unpaid balance after 30 days. Client satisfaction is our No. 1 priority. We strive to provide the highest quality service available. If, at any time, you are dissatisfied with our service or have questions regarding our invoices, please contact us immediately. Your opinions count. Thank you for your business!

# Invoice

| | |
|---|---|
| **Invoice Number** | 227676 |
| **Invoice Date** | Jul 14, 2017 |
| **Supply Date** | Jul 14, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000053164 |
| **Payment Terms** | 45 days net |

**Supplier**
Engeo Inc
2010 Crow Canyon Place
Ste 250
San Ramon, CA 94583
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Nut Plains Treatment- Special Inspection | AU | 1 | $5,295.30 | $5,295.30 |

| | |
|---|---|
| **Subtotal** | $5,295.30 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $5,295.30 |

Powered by



**Invoice**



## GEO
*—Expect Excellence—*

2010 Crow Canyon Place, Suite 250
San Ramon, CA  94583
Phone (925) 866-9000
Fax (888) 279-2698

Mr. Tim Hasler
California American Water Company
tim.hasler@amwater.com
P.O. Box 5623
Cherry Hill, NJ  08034

July 14, 2017
Invoice No:        227676

Project Manager:   Travis Chatters
Project Assistant:  Stacey Lacy

Project        14061.000.000        Nut Plains Well Treatment
**Professional Services through July 09, 2017**

Phase        001        Special Inspections
Client Contract S1714; PO # 5000053164; Line 20 dated 06/08/17, fully executed 06/09/17

**Professional Personnel**

|  | Hours | Rate | Amount |  |
|---|---|---|---|---|
| Staff Engineer | 7.00 | 165.00 | 1,155.00 |  |
| Construction Services Manager | .50 | 159.00 | 79.50 |  |
| Field Representative | 25.50 | 118.00 | 3,009.00 |  |
| Project Assistant | .50 | 115.00 | 57.50 |  |
| Totals | 33.50 |  | 4,301.00 |  |
| **Total Labor** |  |  |  | **4,301.00** |

**Unit Billing**

| | | | | |
|---|---|---|---|---|
| Comp Test per 6x12 Cylinder ASTM C39 |  | 3.0 Tests @ 35.00 | 105.00 |  |
| Compaction ASTM 1557 (A-C) |  | 1.0 Test @ 320.00 | 320.00 |  |
| Field Equipment, Vehicle & Wireless Comm |  | 16.5 Hours @ 23.00 | 379.50 |  |
| Mileage |  | 10.0 Miles @ 0.78 | 7.80 |  |
| Tech Vehicle & Wireless Communication |  | 13.0 Hours @ 14.00 | 182.00 |  |
| **Total Units** |  |  | **994.30** | **994.30** |

| Contract Summary | Current | Previous | To Date |  |
|---|---|---|---|---|
| Total Billings | 5,295.30 | 1,522.00 | 6,817.30 |  |
| Contract Amount |  |  | 11,096.00 |  |
| Contract Remaining |  |  | 4,278.70 |  |
|  |  | **Subtotal this Phase** |  | **$5,295.30** |
|  |  | **Total this Invoice** |  | **$5,295.30** |

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 226989 | 6/16/2017 | 1,522.00 |
| **Total** |  | **1,522.00** |

*Submit via Trulla*

All invoices are due upon receipt. A late charge of 1.5% per month may be added to any unpaid balance after 30 days. Client
satisfaction is our No. 1 priority. We strive to provide the highest quality service available. If, at any time, you are dissatisfied with our
service or have questions regarding our invoices, please contact us immediately. Your opinions count. Thank you for your business!

# Invoice

| | |
|---|---|
| **Invoice Number** | 228230 |
| **Invoice Date** | Aug 11, 2017 |
| **Supply Date** | Aug 11, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000053164 |
| **Payment Terms** | 45 days net |

**Supplier**
Engeo Inc
2010 Crow Canyon Place
Ste 250
San Ramon, CA 94583
US (United States)

**Customer**
California, American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 20 | Nut Plains Treatment- Special Inspection | AU | 1 | $1,702.00 | $1,702.00 |

| | |
|---|---|
| **Subtotal** | $1,702.00 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $1,702.00 |

Powered by


**Invoice**



**GEO**
*Expect Excellence*

2010 Crow Canyon Place, Suite 250
San Ramon, CA 94583
Phone (925) 866-9000
Fax (888) 279-2698

Mr. Tim Hasler
California American Water Company
tim.hasler@amwater.com
P.O. Box 5623
Cherry Hill, NJ 08034

August 11, 2017
Invoice No:        228230

Project Manager:     Travis Chatters
Project Assistant:   Stacey Lacy

Project     14061.000.000     Nut Plains Well Treatment
**Professional Services through August 06, 2017**

Phase     001     Special Inspections
Client Contract S1714; PO # 5000053164; Line 20 dated 06/08/17, fully executed 06/09/17

**Professional Personnel**

|  | Hours | Rate | Amount |  |
|---|---|---|---|---|
| Staff Engineer | 1.00 | 165.00 | 165.00 |  |
| Construction Services Manager | .50 | 159.00 | 79.50 |  |
| Field Representative | 2.00 | 118.00 | 236.00 |  |
| Field Representative - OT | 6.00 | 177.00 | 1,062.00 |  |
| Project Assistant | .50 | 115.00 | 57.50 |  |
| Totals | 10.00 |  | 1,600.00 |  |
| **Total Labor** |  |  |  | 1,600.00 |

**Unit Billing**

| | | | |
|---|---|---|---|
| Field Equipment, Vehicle & Wireless Comm | 2.0 Hours @ 23.00 | 46.00 |  |
| Tech Vehicle & Wireless Communication | 4.0 Hours @ 14.00 | 56.00 |  |
| **Total Units** |  | 102.00 | 102.00 |

**Contract Summary**

|  | Current | Previous | To Date |
|---|---|---|---|
| Total Billings | 1,702.00 | 6,817.30 | 8,519.30 |
| Contract Amount |  |  | 11,096.00 |
| Contract Remaining |  |  | 2,576.70 |

|  |  |
|---|---|
| **Subtotal this Phase** | **$1,702.00** |
| **Total this Invoice** | **$1,702.00** |

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 227676 | 7/14/2017 | 5,295.30 |
| **Total** |  | **5,295.30** |

*Submit via Taulia*

All invoices are due upon receipt. A late charge of 1.5% per month may be added to any unpaid balance after 30 days. Client satisfaction is our No. 1 priority. We strive to provide the highest quality service available. If, at any time, you are dissatisfied with our service or have questions regarding our invoices, please contact us immediately. Your opinions count. Thank you for your business!

Attn: tim.hasler@amwater.com

**Invoice**



2010 Crow Canyon Place, Suite 250
San Ramon, CA  94583
Phone (925) 866-9000
Fax (888) 279-2698

Mr. Tim Hasler
California American Water Company
tim.hasler@amwater.com
P.O. Box 5623
Cherry Hill, NJ  08034

September 8, 2017
Invoice No:          228896
Project Manager:   Travis Chatters
Project Assistant:  Stacey Lacy

Project          14061.000.000        Nut Plains Well Treatment
**Professional Services through September 3, 2017**
------------------------------------------------------------------------
Phase          001          Special Inspections
Client Contract S1714; PO # 5000053164; Line 20 dated 06/08/17, fully executed 06/09/17

**Professional Personnel**

|  | Hours | Rate | Amount |  |
|---|---|---|---|---|
| Associate Engineer | 1.00 | 230.00 | 230.00 | |
| Staff Engineer | 4.00 | 165.00 | 660.00 | |
| Project Assistant | 1.25 | 115.00 | 143.75 | |
| Totals | 6.25 | | 1,033.75 | |
| **Total Labor** | | | | **1,033.75** |

**Unit Billing**

|  |  |  |  |  |
|---|---|---|---|---|
| Comp Test per 6x12 Cylinder ASTM C39 | | 1.0 Test @ 35.00 | 35.00 | |
| **Total Units** | | | **35.00** | **35.00** |

**Contract Summary**

|  | Current | Previous | To Date |  |
|---|---|---|---|---|
| Total Billings | 1,068.75 | 8,519.30 | 9,588.05 | |
| Contract Amount | | | 11,096.00 | |
| Contract Remaining | | | 1,507.95 | |

Subtotal this Phase          $1,068.75

Total this Invoice          $1,068.75

**Outstanding Invoices**

| Number | Date | Balance |
|---|---|---|
| 227676 | 7/14/2017 | 5,295.30 |
| 228230 | 8/11/2017 | 1,702.00 |
| **Total** | | **6,997.30** |

*Submit via Taulia*

SES: 1000566360
DOC: 5000826852

# Invoice

| | | | |
|---|---|---|---|
| **Invoice Number** | 7406 | **Supplier** | **Customer** |
| **Invoice Date** | Sep 21, 2017 | PETERSON BRUSTAD INC | California American Water Company |
| **Supply Date** | Aug 31, 2017 | 1180 IRON POINT RD | 131 Woodcrest Road |
| **Currency** | USD (US Dollar) | STE 260 | Cherry Hill, NJ 08003 |
| **Purchase Order** | 5000082032 | FOLSOM, CA 95630-8325 | US (United States) |
| **Payment Terms** | 30 days net | US (United States) | |

**Customer Tax Identifier**

20-3310005

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Nut Plains Storm Drain Design | AU | 1 | $4,591.85 | $4,591.85 |

| | |
|---|---|
| **Subtotal** | $4,591.85 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $4,591.85 |

Powered by





**PETERSON . BRUSTAD . INC**
**ENGINEERING . CONSULTING**

1180 Iron Point Road, Suite 260
Folsom, CA 95630
Phone 916.608-2212 Fax 916.608-2232

**Bill To:**
Accounts Payable Department
American Water Shared Services Center
P.O. Box 5623
Cherry Hill, NJ  08034
Attn: Tim.Hasler@amwater.com

**DATE:** September 14, 2017
**INVOICE #** 7406
**FOR:** *Cal Am Nut Plains*
*Well Storm Drain*
*P.O. # 5000082032*

| For Services Rendered from 8/01/17 through 8/31/17 | | | | |
|---|---|---|---|---|
| **DESCRIPTION** | **Unit** | **Rate** | **Quantity** | **AMOUNT** |
| Labor | | | | |
|     Karl Brustad, Principal | Hr | 240 | 3.5 | $840.00 |
|     Ashley Martin, Project Engineer 1 | Hr | 151 | 8 | $1,208.00 |
|     Michael Pantell, Staff Engineer 1 | Hr | 114 | 19.5 | $2,223.00 |
|     Ann D'Ambrosio, Administrative 4 | Hr | 92 | 1 | $92.00 |
|     Subtotal Labor | | | | $4,363.00 |
| Incidental In-house Expenses (At 5% of Labor) | | 5% | | $218.15 |
| Mileage | | 0.535 | 20 | $10.70 |
| | | | | |
| | **AMOUNT DUE THIS INVOICE** | | | **$4,591.85** |
| | PREVIOUSLY BILLED | | | $0.00 |
| | CONTRACT AMOUNT | | | $17,469.00 |
| | CONTRACT BALANCE | | | $12,877.15 |

Make all checks payable to Peterson Brustad Inc.
If you have any questions concerning this invoice,
contact Karl Brustad, (916) 608-2212 x113, kbrustad@pbieng.com

**THANK YOU FOR YOUR BUSINESS!**

Project Manager



**PETERSON . BRUSTAD . INC**
ENGINEERING . CONSULTING

## Monthly Progress Report
California American Water
Nut Plains Well Storm Drain
8/1/17 - 8/31/17

| Task | Spent This Period | Spent to Date | Budget | Remaining Budget | Work Completed This Period | Misc. Comments |
|------|---------|---------|---------|---------|---------|---------|
| Nut Plains Well Storm Drain | $4,592 | $4,592 | $17,469 | $12,877 | Utility research; Draft design plans; Coordination with City of Rancho Cordova | |
| TOTAL | $4,592 | $4,592 | $17,469 | $12,877 | | |

# Invoice

| | |
|---|---|
| **Invoice Number** | 7466 |
| **Invoice Date** | Oct 16, 2017 |
| **Supply Date** | Sep 30, 2017 |
| **Currency** | USD (US Dollar) |
| **Purchase Order** | 5000082032 |
| **Payment Terms** | 30 days net |

**Supplier**
PETERSON BRUSTAD INC
1180 IRON POINT RD
STE 260
FOLSOM, CA 95630-8325
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Customer Tax Identifier**

20-3310005

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Nut Plains Storm Drain Design | AU | 1 | $1,876.88 | $1,876.88 |

| | |
|---|---|
| **Subtotal** | $1,876.88 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $1,876.88 |

SES: 1000525517
DOC: 5000770807

Powered by




**PETERSON . BRUSTAD . INC**
ENGINEERING . CONSULTING

1180 Iron Point Road, Suite 260
Folsom, CA 95630
Phone 916.608-2212  Fax 916.608-2232

**Bill To:**
Accounts Payable Department
American Water Shared Services Center
P.O. Box 5623
Cherry Hill, NJ  08034
Attn: Tim.Hasler@amwater.com

| | |
|---|---|
| **DATE:** | October 16, 2017 |
| **INVOICE #** | 7466 |
| **FOR:** | *Cal Am Nut Plains* |
| | *Well Storm Drain* |
| | ***P.O. # 5000082032*** |

| For Services Rendered from 9/01/17 through 9/30/17 | | | | |
|---|---|---|---|---|
| **DESCRIPTION** | **Unit** | **Rate** | **Quantity** | **AMOUNT** |
| Labor | | | | |
|    Karl Brustad, Principal | Hr | 240 | 2.5 | $600.00 |
|    Ashley Martin, Project Engineer 1 | Hr | 151 | 6.5 | $981.50 |
|    Baron Creager, Staff Engineer 1 | Hr | 114 | 1 | $114.00 |
|    Ann D'Ambrosio, Administrative 4 | Hr | 92 | 1 | $92.00 |
|    Subtotal Labor | | | | $1,787.50 |
| Incidental In-house Expenses (At 5% of Labor) | | 5% | | $89.38 |
| | | | | |
| | | | | |

| | |
|---|---|
| **AMOUNT DUE THIS INVOICE** | $1,876.88 |
| PREVIOUSLY BILLED | $4,591.85 |
| CONTRACT AMOUNT | $17,469.00 |
| CONTRACT BALANCE | $11,000.28 |

Make all checks payable to Peterson Brustad Inc.
If you have any questions concerning this invoice,
contact Karl Brustad, (916) 608-2212 x113, kbrustad@pbieng.com

**THANK YOU FOR YOUR BUSINESS!**

**Project Manager**



## Monthly Progress Report
California American Water
Nut Plains Well Storm Drain
9/1/17 - 9/30/17

| Task | Spent This Period | Spent to Date | Budget | Remaining Budget | Work Completed This Period | Misc. Comments |
|---|---|---|---|---|---|---|
| Nut Plains Well Storm Drain | $4,592 | $6,469 | $17,469 | $11,000 | Utility research; Draft design plans; Coordination with City of Rancho Cordova | |
| TOTAL | $4,592 | $6,469 | $17,469 | $11,000 | | |

# Invoice

| | | | |
|---|---|---|---|
| **Invoice Number** | 7531 | **Supplier** | **Customer** |
| **Invoice Date** | Nov 16, 2017 | PETERSON BRUSTAD INC | California American Water Company |
| **Supply Date** | Oct 31, 2017 | 1180 IRON POINT RD | 131 Woodcrest Road |
| **Currency** | USD (US Dollar) | STE 260 | Cherry Hill, NJ 08003 |
| **Purchase Order** | 5000082032 | FOLSOM, CA 95630-8325 | US (United States) |
| **Payment Terms** | 30 days net | US (United States) | |

**Customer Tax Identifier**

203310005

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Nut Plains Storm Drain Design | AU | 1 | $1,168.13 | $1,168.13 |

|  |  |
|---|---|
| **Subtotal** | $1,168.13 |
| **Total Tax Amount** | $0.00 |
| **Invoice Amount** | $1,168.13 |

SES: 1000538522, DOC: 5000789109





# PETERSON . BRUSTAD . INC
## ENGINEERING . CONSULTING

1180 Iron Point Road, Suite 260
Folsom, CA 95630
Phone 916.608-2212  Fax 916.608-2232

**DATE:** November 16, 2017
**INVOICE #** 7531
**FOR:** *Cal Am Nut Plains*
*Well Storm Drain*
***P.O. # 5000082032***

**Bill To:**
Accounts Payable Department
American Water Shared Services Center
P.O. Box 5623
Cherry Hill, NJ  08034
Attn: Tim.Hasler@amwater.com

For Services Rendered from 10/01/17 through 10/31/17

| DESCRIPTION | Unit | Rate | Quantity | AMOUNT |
|---|---|---|---|---|
| Labor | | | | |
|    Karl Brustad, Principal | Hr | 240 | 3.5 | $840.00 |
|    Ashley Martin, Project Engineer 1 | Hr | 151 | 1.5 | $226.50 |
|    Ann D'Ambrosio, Administrative 4 | Hr | 92 | 0.5 | $46.00 |
|    Subtotal Labor | | | | $1,112.50 |
| Incidental In-house Expenses (At 5% of Labor) | | 5% | | $55.63 |
| | | | | |

| | |
|---|---|
| **AMOUNT DUE THIS INVOICE** | **$1,168.13** |
| PREVIOUSLY BILLED | $6,468.73 |
| CONTRACT AMOUNT | $17,469.00 |
| CONTRACT BALANCE | $9,832.15 |

Make all checks payable to Peterson Brustad Inc.
If you have any questions concerning this invoice,
contact Karl Brustad, (916) 608-2212 x113, kbrustad@pbieng.com

**THANK YOU FOR YOUR BUSINESS!**

Project Manager



PETERSON . BRUSTAD . INC
ENGINEERING . CONSULTING

## Monthly Progress Report
California American Water
Nut Plains Well Storm Drain
10/1/17 - 10/31/17

| Task | Spent This Period | Spent to Date | Budget | Remaining Budget | Work Completed This Period | Misc. Comments |
|---|---|---|---|---|---|---|
| Nut Plains Well Storm Drain | $4,592 | $7,637 | $17,469 | $9,832 | Developed final design plans; Coordination with City of Rancho Cordova | |
| **TOTAL** | $4,592 | $7,637 | $17,469 | **$9,832** | | |

# Invoice

| | |
|---|---|
| Invoice Number | 7592 |
| Invoice Date | Dec 18, 2017 |
| Supply Date | Nov 30, 2017 |
| Currency | USD (US Dollar) |
| Purchase Order | 5000082032 |
| Payment Terms | 30 days net |

**Supplier**
PETERSON BRUSTAD INC
1180 IRON POINT RD
STE 260
FOLSOM, CA 95630-8325
US (United States)

**Customer**
California American Water Company
131 Woodcrest Road
Cherry Hill, NJ 08003
US (United States)

**Customer Tax Identifier**

20-3310005

**Ship To**
Sacramento Prod
4701 Beloit Dr
Sacramento, CA 95838-2434
US (United States)

| # | PO Item | Description | Unit | Qty | Unit Price | Line Total |
|---|---|---|---|---|---|---|
| 1 | 10 | Nut Plains Storm Drain Design | AU | 1 | $1,722.00 | $1,722.00 |

SES: 1000548020, DOC: 5000801796

| | |
|---|---|
| Subtotal | $1,722.00 |
| Total Tax Amount | $0.00 |
| Invoice Amount | $1,722.00 |

Powered by




**PETERSON . BRUSTAD . INC**
ENGINEERING . CONSULTING

1180 Iron Point Road, Suite 260
Folsom, CA 95630
Phone 916.608-2212  Fax 916.608-2232

**DATE:** December 12, 2017
**INVOICE #** 7592
**FOR:** *Cal Am Nut Plains*
*Well Storm Drain*
***P.O. # 5000082032***

**Bill To:**
Accounts Payable Department
American Water Shared Services Center
P.O. Box 5623
Cherry Hill, NJ  08034
Attn: Tim.Hasler@amwater.com

| For Services Rendered from 11/01/17 through 11/30/17 | | | | |
|---|---|---|---|---|
| **DESCRIPTION** | **Unit** | **Rate** | **Quantity** | **AMOUNT** |
| Labor | | | | |
| Karl Brustad, Principal | Hr | 240 | 5.5 | $1,320.00 |
| Jacob Rowe, Staff Engineer 1 | Hr | 114 | 2 | $228.00 |
| Ann D'Ambrosio, Administrative 4 | Hr | 92 | 1 | $92.00 |
| Subtotal Labor | | | | $1,640.00 |
| Incidental In-house Expenses (At 5% of Labor) | | 5% | | $82.00 |

| | |
|---|---|
| **AMOUNT DUE THIS INVOICE** | **$1,722.00** |
| PREVIOUSLY BILLED | $7,636.86 |
| CONTRACT AMOUNT | $17,469.00 |
| CONTRACT BALANCE | $8,110.14 |

Make all checks payable to Peterson Brustad Inc.
If you have any questions concerning this invoice,
contact Karl Brustad, (916) 608-2212 x113, kbrustad@pbieng.com

**THANK YOU FOR YOUR BUSINESS!**

Project Manager _____



## Monthly Progress Report
California American Water
Nut Plains Well Storm Drain
11/1/17 - 11/30/17

| Task | Spent This Period | Spent to Date | Budget | Remaining Budget | Work Completed This Period | Misc. Comments |
|------|------|------|------|------|------|------|
| Nut Plains Well Storm Drain | $1,722 | $9,359 | $17,469 | $8,110 | Submitted final design plans. | |
| **TOTAL** | $1,722 | $9,359 | $17,469 | **$8,110** | | |

# EXHIBIT G

| TABLE 4 | | |
|---|---|---|
| **Nut Plains Well GAC Treatment System** | | |
| **Breakdown of Monitoring and Testing Costs** | | |
| Date | Constituents | Cost (US $) |
| 10/3/2017 | PFAS-IOC (Metals 200.8 and 200.7, Nitrate (N) | $731.88 |
| 10/3/2017 | PFAS-IOC | $503.44 |
| 10/3/2017 | PFAS-IOC | $503.44 |
| 10/3/2017 | PFAS - Eurofins | $900.00 |
| 10/10/2017 | PFAS - Eurofins | $900.00 |
| 10/10/2017 | PFAS-IOC | $731.88 |
| 10/10/2017 | PFAS-IOC | $731.88 |
| 10/10/2017 | PFAS-IOC | $731.88 |
| 10/17/2017 | PFAS-IOC | $2,195.64 |
| 10/24/2017 | PFAS-IOC | $825.00 |
| 10/24/2017 | PFAS-IOC | $825.00 |
| 10/24/2017 | PFAS-IOC | $825.00 |
| 10/31/2017 | PFAS-IOC | $550.00 |
| 10/31/2017 | PFAS-IOC | $550.00 |
| 10/31/2017 | PFAS-IOC | $825.00 |
| 11/1/2017 | Bacti | $54.00 |
| 11/7/2017 | PFAS-IOC | $550.00 |
| 11/7/2017 | PFAS-IOC | $550.00 |
| 11/7/2017 | PFAS-IOC | $825.00 |
| 11/14/2017 | PFAS-IOC | $550.00 |
| 11/14/2017 | PFAS-IOC | $550.00 |
| 11/14/2017 | PFAS-IOC | $825.00 |
| 11/21/2017 | PFAS-IOC | $726.00 |
| 11/21/2017 | PFAS-IOC | $484.00 |
| 11/21/2017 | PFAS-IOC | $484.00 |
| 11/28/2017 | PFAS-IOC | $550.00 |
| 11/28/2017 | PFAS-IOC | $550.00 |
| 11/28/2017 | PFAS-IOC | $825.00 |
| 12/12/2017 | Bacti | $324.00 |
| 12/12/2017 | PFAS | $2,600.00 |
| 1/2/2018 | PFAS-IOC | $2,600.00 |
| 1/2/2018 | Bacti | $324.00 |
| 2/20/2018 | Bacti | $324.00 |
| 2/20/2018 | PFAS-IOC | $3,380.00 |
| 2/23/2018 | Bacti | $60.00 |
| 3/12/2018 | PFAS-IOC | $3,390.00 |
| 3/12/2018 | Bacti | $324.00 |
| 4/3/2018 | PFAS-IOC | $2,680.00 |
| 4/3/2018 | Bacti | $324.00 |

0.0/
- /2-8-19/ /vc

| TABLE 4 (continued) | | |
|---|---|---|
| 5/1/2018 | PFAS-IOC | $3,390.00 |
| 5/1/2018 | Bacti | $324.00 |
| 6/13/2018 | PFAS-IOC | $2,680.00 |
| 6/13/2018 | Bacti | $324.00 |
| 7/11/2018 | PFAS-IOC | $2,680.00 |
| 7/11/2018 | Bacti | $324.00 |
| 8/14/2018 | PFAS-IOC | $3,300.00 |
| 8/14/2018 | Bacti | $324.00 |
| 9/7/2018 | Bacti | $195.00 |
| 9/11/2018 | PFAS-IOC | $2,600.00 |
| 9/11/2018 | Bacti | $324.00 |
| 9/18/2018 | Bacti | $54.00 |
| 9/19/2018 | PFAS-IOC | $1,238.26 |
| 9/19/2018 | PFAS-IOC | $878.26 |
| 9/20/2018 | PFAS-VOC | $1,051.00 |
| 9/20/2018 | PFAS-VOC | $891.00 |
| 9/21/2018 | PFAS-VOC | $1,051.00 |
| 9/22/2018 | PFAS-VOC | $891.00 |
| 9/22/2018 | PFAS-VOC | $1,051.00 |
| 9/23/2018 | PFAS-VOC | $1,051.00 |
| 9/23/2018 | PFAS-VOC | $891.00 |
| 9/24/2018 | Bacti | $54.00 |
| 9/26/2018 | PFAS-VOC | $3,513.00 |
| 10/2/2018 | Bacti | $54.00 |
| 10/9/2018 | Bacti | $54.00 |
| 10/16/2018 | PFAS-IOC | $2,160.00 |
| 10/16/2018 | PFAS-IOC | $324.00 |
| 10/23/2018 | Bacti | $54.00 |
| **TOTAL** | | **$67,908.56** |